William B. Lawless, J.
The above actions were tried before this court and a jury. In the principal action brought by plaintiff Raymond Martin, an employee of Buffalo Structural Steel Corp., against Siegfried Construction Co., Inc., the jury returned a verdict in favor of the plaintiff for $25,000 for personal injuries sustained when he fell from the steel works being erected at the Kenmore Mercy Hospital in the Town of Tonawanda, New York. The principal action was submitted to the jury on the question of defendant Siegfried’s negligence and particularly, whether Siegfried violated subdivision 4 of section 241 of the New York Labor Law which requires planking where the floor beams of construction are of iron or steel.
Siegfried Construction Co., Inc., joined Buffalo Structural Steel Corp. as a third-party defendant in two separate causes *1081 of action, the first, based on a claim for indemnity under its contract with Buffalo Structural and the second, based upon common-law implied indemnity. Before submitting the principal action to the jury, this court dismissed the second cause of action based upon implied indemnity and reserved decision on the third-party defendant’s motion to dismiss the first cause of action based in contract.
This court must interpret the contract executed February 12, 1958, between the Siegfried Construction Co., Inc., and Buffalo Structural Steel Corporation and must determine whether Siegfried is entitled to be indemnified by Buffalo Structural under that contract.
The pertinent provisions relating to indemnity are article XIV and article XV. Portions thereof provide as follows:
“article xiv. The Sub-Contractor hereby assumes entire responsibility and liability in and for any and all damage or injury (including death) of any kind or nature whatever to all persons, whether employees or otherwise, and to all property, caused by or resulting from, the execution of the work provided for in this contract, or occurring in connection therewith, and agrees to indemnify and save harmless the Contractor, its agents, servants and employees from and against any and all loss, expense, damage or injury caused or alleged to have been caused or occasioned, directly or indirectly, by the act or negligence of the Sub-Contractor, his agents, employees, material men, and all other persons acting for, through or under him, or any of them, or resulting from the use by the Sub-Contractor, his agents, employees, material men, and all other persons acting through, for or under him, or any of them, of any materials, tools, implements, appliances, scaffolding ways, works or machinery, or other property of the Contractor, whether the same shall arise under the Common Law, Employers ’ Liability Act, or the so-called Workmen’s Compensation Law (which may be in effect in the locality in which the work is situated), or otherwise * # *
11 article xv. The Sub-Contractor for himself, his sub-contractors, his material men and all other persons acting for, through or under him or any of them, covenants and agrees with respect to all or any part of the work contracted for herein or as a result thereof and at no additional charge or expense to the Contractor: To obtain all necessary permits therefor; to fully comply with all laws, ordinances, regulations and directives of the Federal, State and Local Governments and authorities of the place or locality in which such work is situated, including without limitation, labor laws and regulations, health, sanitation *1082 and safety laws and regulations and insurance requirements; to comply with all rules of the Board of Fire Underwriters; and to indemnify the Contractor and save it harmless of and from any and all losses, costs or expenses suffered by the Contractor by reason of the real or alleged violation of such laws, ordinances, regulations and directives.
1 ‘ In the event that the Sub-Contractor shall, in the opinion of the Contractor, fail or refuse to fully perform the foregoing covenant in any respect, the Contractor shall be at liberty to immediately invoke all the rights and remedies provided to him in Article VI hereof.”
Siegfried can recover over against Buffalo Structural only if the contract affirmatively indemnifies it against its own active negligence or if the intent to indemnify it can be clearly implied from the contract and the surrounding facts. Such a contract will not be construed to indemnify a party against his active negligence unless such intention is expressed in unequivocal terms. (Thompson-Starrett Co. v. Otis Elevator Co., 271 N. Y. 36.)
Siegfried contends that the language above cited unequivocally requires Buffalo Structural to indemnify it against the recovery made by Martin in the principal action. Buffalo Structural on the other hand contends that the contract provisions cited do not unequivocally express the intention of the subcontractor to indemnify the general contractor for its failure to perform a statutory duty, namely, to plank.
I.
The duty on the part of a general contractor to comply with subdivision 4 of section 241 of the Labor Law is an absolute one and is nondelegable. (Olsommer v. Walker & Sons, 4 A D 2d 424, affd. 4 N Y 2d 793; Soderman v. Stone Bar Associates, 208 Misc. 864, affd. 3 A D 2d 680; Rufo v. Orlando, 286 App. Div. 88, affd. 309 N. Y. 345.) The cases are clear that the contractor’s duty under subdivision 4 of section 241 is one that must be complied with as the work progresses. Violation of the duty on the part of the general contractor to plank in accordance with subdivision 4 of section 241 is negligence as a matter of law. (Teller v. Prospect Hgts. Hosp., 280 N. Y. 456; Labieko v. American Piano Co., 268 N. Y. 639.)
In the instant case, the contract itself (art. I) shows clearly the intent of both parties that ‘ ‘ the Sub-Contractor shall and will provide all the labor, materials, scaffolds, tools, etc., necessary to perform all the work related to and necessarily involved in the structural steel work complete ”. The contract did not *1083 impose any working duty on Siegfried as to the structural steel work.
Upon the trial, the superintendent of the work for Buffalo Structural Steel testified that “ planking ” was required when “bolting up” was being done. He testified that the bolting up gang undertook its work when the “raising gang ” completed erection of the steel beams. He testified that planks were being laid by employees of Buffalo Structural Steel on other portions of the hospital building where the steel erection had been completed. There was testimony indicating that Siegfried maintained an office at the job site but there is no proof that any Siegfried employee was doing any steel erection work on the premises at any time.
The proof indicated that Buffalo Structural Steel was carrying out the terms of its contract with complete supervision and control over its work. It would appear that Robert Martin could not have fallen from the steel framework to the basement if there had been compliance with the State Labor Law and if planking were in place.
As indicated above, the eases in New York are clear that a general contractor can recover over from a subcontractor under an indemnity agreement only if the language of the agreement is stated in unequivocal terms or beyond peradventure of a doubt.
In Turner Constr. Co. v. Rockwood Sprinkler Co. (249 App. Div. 508, affd. without opinion 275 N. Y. 635 [1937]), the plaintiff was general contractor for the construction of a 14-story building. Rockwood was a subcontractor for installation of a sprinkler system and defendant Le Beau was a subcontractor for heating equipment. In an action against all three parties for damage resulting from the death of an employee of a third subcontractor, joint judgment was awarded against such defendant and affirmed. (De Haen v. Rockwood Sprinkler Co., 234 App. Div. 680, affd. 258 N. Y. 350.) The defendants each paid one third and thereafter the general contractor, Turner, sued to recover from the subcontractor the amount which it had paid on the judgment on the basis of its indemnity agreement (art. XIII) with them. The First Department affirmed recovery over by Turner on the strength of the indemnity agreement. It should be pointed out that the language in the Turner agreement (art. XIII) is almost identical with the language used in article XIV of the contract between Siegfried and Buffalo Structural Steel Corp. (See Cases & Points, vol. 4917, Record, pp. 34, 35.) The decision in Turner rested upon the earlier holding in Dudar v. Milef Realty Corp. (258 N. Y. 415 [1932]) *1084 wherein the subcontractor also assumed sole responsibility for results of negligence and agreed to hold harmless the general contractor therefor.
Recently, the Court of Appeals unanimously affirmed, without opinion (5 N Y 2d 723), the decision in Jordan v. City of New York (3 A D 2d 507 [1957]). Therein a jury returned a verdict in favor of plaintiff administratrix against the City of New York. The intestate, an employee of respondent contractor, engaged in constructing a power plant for the city, was killed when he fell into an unguarded turbine pit. The negligence of the city was its failure to comply with section 241 of the Labor Law, specifically to protect by a standard railing, any opening into which a workman might fall. Following return of the verdict, the trial court dismissed the city’s third-party complaint seeking indemnity from the contractor on the ground that the agreement did not “ unequivocally express” the intention of the contractor to indemnify the city for its failure to perform a statutory active nondelegable duty. On appeal the city conceded its negligence and its status as an active tort-feasor resulting from its failure to perform the duty imposed by section 241 of the Labor Law, and it further conceded that it had no cause of action for common-law indemnification against the contractor, its co-tort-feasor. In denying the city judgment on its third-party complaint against the contractor, the trial court had relied on the cases urged upon this court by Buffalo Structural, viz., Semanchuck v. Fifth Ave. & 37th St. Corp. (290 N. Y. 412) and Walters v. Rao Elec. Equip. Co. (289 N. Y. 57).
The Appellate Division directed that the City of New York as third-party plaintiff recover as against the contractor. It held that the test of clear and unequivocal intent to indemnify is the same whether the active negligence is one arising from common law or the violation of a statutory duty. Actually, the decision turned on the court’s interpretation of the indemnity provision and it pointed out that the agreement referred to the “ sole ” responsibility of the contractor for all physical injuries. (The contract before us uses “ entire ” responsibility.) The contract in Jordan further provided that the contractor would be solely responsible and liable for all claims for injuries to person or damage to property occasioned by or resulting from methods or processes in the performance of the work whether “ such damage or injuries be attributable to negligence of the contractor or his employees or otherwise.”
As Justice Valekte’s opinion in the Jordan case points out, in the Walters case the court stated that the language of indemnification in the Turner Constr. Co. case (supra) was sufficient
*1085 to permit recovery over against the subcontractor and, in so doing, approved the rule of Thompson-Star rett Co. v. Otis Elevator Co. (271 N. Y. 36, supra).
We conclude that the language of indemnification before us shows in unequivocal language an intent on the part of Buffalo Structural Steel to indemnify Siegfried Construction Co., Inc., under the conditions presented in the principal case. We therefore order judgment in favor of Siegfried Construction Co., Inc., against Buffalo Structural Steel Corp., for $25,000, together with costs and disbursements incurred in the defense of the principal action brought by Raymond Martin.