Benjamin Brenner, J.
Implicit in the jury’s verdict for the plaintiff is a finding that the defendant Safway, as lessor of the defective scaffolding bracket, had failed to exercise due care in supplying same to the job site, which failure proximately caused plaintiff’s injuries. That determination is warranted upon the evidence even though plaintiff’s employer may have been concurrently negligent in making use of the defective bracket (La Rocca v. Farrington, 276 App. Div. 126, affd. 301 N. Y. 247).
The defendant urges that the use by plaintiff’s employer of so openly and patently defective a piece of equipment necessarily required a finding of an efficient intervening cause of the latter’s negligence as a matter of law, absolving the defendant. While I have discovered no New York authority upon this precise question, there are cases in other jurisdictions holding that the knowing use of the defective article by a lessee in the manner for which it was intended to be used would not constitute an intervening cause so as to break the causal relationship between the lessor’s negligence in supplying the defective article and the injury to a third party (Ferraro v. Taylor, 197 Minn. 5; Trusty v. Patterson, 299 Pa. 469; Mitchell v. Lonergan, 285 Mass. 266; Bowyer v. Cummins, 81 Ga. App. 118). There are several Federal cases to the same effect (Dierks Lbr. & Coal Co. v. Mabry, 128 F. 2d 1005; Coop v. Williamson, 173 F. 2d 313).
I am satisfied that the use by plaintiff’s employer, even with knowledge that the bracket was obviously defective, does not, per se, absolve the defendant from its duty to refrain from leasing it in that condition in the first place, with knowledge, active or constructive, that it was unfit and dangerous for the use intended. Thus, had the defendant not initially provided a potentially dangerous piece of equipment, the platform upon which it rested would not have collapsed unless its collapse was due to some other or unrelated cause, and the latter situation was plainly not the finding of the jury.
The jury’s verdict in the sum of $24,000 was disappointing to me, and may even have been the result of a compromise, for damages were speedily assessed following extended deliberations, initial disagreement and final agreement of at least 10 jurors as to the defendant’s liability. The plaintiff’s principal injury is indeed a grievous one, for he suffers from an ununited and unaligned fracture of the odontoid process of the second cervical vertebra, permanently restricting movement of the head. There are, however, several ameliorating factors. The plaintiff is 62. His spinal cord is not involved and the limitation of motion of his head may have been found to be less than the *621 degree claimed and partially due to an unrelated arthritic and disc pathology in the neck. He is and has been employed, and while $12,000 special damages are claimed, the jury may also have doubted that the major part of it, namely, the claim of lost earnings, was truly related to his disability. The verdict, therefore, is not obviously so insufficient as to shock the conscience of the court (Banks v. Begell, 1 A D 2d 726, affd. 2 N Y 2d 736) and, though I should have preferred a somewhat larger recovery, I cannot substitute my judgment as to the compensatory damages for that of the jury “ whose peculiar province ” it is to assess them. (Brown v. McChesney, 279 App. Div. 825.)
Plaintiff’s employer, as third-party defendant and the lessee of the bracket, asks the court to rule, as a matter of first impression, that there can be no contractual indemnification for the negligent act of the lessor committed prior to the signing of the instrument of indemnification and delivery of that piece of equipment in an already defective state to the job site. Resolution of this theory of nonliability upon a contract of indemnification need not be reached if, as I believe, negligence did not predate the contract. Here the negligence found against the lessor could only have come into existence upon the delivery of the bracket when the leasing contract was executed. This is to say that, though the bracket had already been rendered defective and was in an uninspected state, the negligence of the supplier could only pose a danger upon its delivery to and use at the job site. Until such delivery and use of it, no duty arose to exercise due care as no one was in jeopardy before then. The prior failure to discover the defect could only spring into an act of negligence on the delivery for use of the defective equipment, for an act of negligence becomes so when the failure to exercise due care as to a foreseeable danger produces the possibility of injury (La Rocca v. Farrington, supra; Payne v. City of New York, 277 N. Y. 393). Hence it cannot be said that the lessor’s negligence antedated the execution of the contract.
The language contained in the contract expressly provides for the very contingency guarded against, namely, that if defective parts are supplied, they would not be used, it being the intent of the parties to save the lessor harmless against such possible use. It provides that the lessee “ assumes all responsibility for claims * * * growing out of the maintenance, or possession and use of said equipment.” The lessee further acknowledges that ‘ ‘ when delivered * * * the equipment was in good order and repair” and “ adequate, sufficient and proper for the purposes for which it was intended.” The rules incorporated in the contract further provide that the lessee *622 shall “never use any Safway equipment that is damaged or distorted in any way. ” These provisions are sufficiently explicit and demonstrate clear intent to indemnify for the indemnitee’s own negligence. True, the language does not expressly refer to the negligence of the indemnitee but the intent is clear and unequivocal to that effect and it is the intent which controls. (Centino v. Isbrandtsen Co., 11 N Y 2d 690; Jordan v. City of New York, 3 A D 2d 507; Salamy v. New York Central System, 1 A D 2d 27.)
The added language that the lessee would 1 ‘ never use any Safway equipment that is damaged or deteriorated in any way ” can only be read in the light that the indemnitor undertook to exercise care on receipt and use of the equipment and to reject any defective part thereof when so delivered for use on the job site and the failure to do so only added to the indemnitor’s responsibility for harm caused thereby.
It is to be noted that in expressing the extent of responsibility for injury indemnified against, the term “ all responsibility ” is stated in the instant contract of indemnification. This term may be equated with that of “ entire responsibility ” in Martin v. Siegfried Constr. Co. (29 Misc 2d 1080) and in Powell v. Senville 35th St. Realty Corp. (29 Misc 2d 77) and with the term “ sole responsibility ” in Jordan v. City of New York (supra). The need for clear and unequivocal intent is thus further satisfied by the specific use of the words “ all responsibility,” entitling the lessor to judgment over upon the contract of indemnification.
All motions to set aside the verdict are denied and the third-party plaintiff Safway Steel Scaffolds Supply Corp. is granted judgment over against the third-party defendants James Di Benedetto and William Di Benedetto, doing business as State Mason Construction Co. Execution is stayed for 30 days from entry of judgment.