J. Irwin Shapiro, J.
Upon the completion of proof in this jury case, the court after a conference with counsel made the following statement:
“ Gentlemen, in chambers, I told all of you that I was averse to dismissing the complaint and taking the- facts away from the jury, because if I were in error, it would mean that the plaintiff would have to come back for a new trial, and while I would not shirk my responsibility if there were any lingering possibility of reversal, I would prefer to submit the case to the jury; have them pass upon the facts in the case; find a verdict for the plaintiff, if they did so find, so that there would be a fixed amount; then, if I were still of the same opinion, I would set aside the verdict and dismiss the complaint so that if the Appellate Courts found me to be in error they could reinstate the verdict and obviate the necessity of a new trial.
‘ ‘ I then suggested to you gentlemen that you agree upon a dollar figure as the amount of damages that the plaintiff would be entitled to in this case, and by consent, the figure was fixed at fifteen thousand dollars, all defendants agreeing that there is no question of fact in this case except for the possible claim that the plaintiff was guilty of contributory negligence, and that is waived, so that if the plaintiff is entitled to recover in this case against one or more of the defendants, his recovery should be in the sum of fifteen thousand dollars. The Court is going to dismiss the complaint as a matter of law as against C. B. S. Columbia, Inc. and Landes Heating Co., Inc.; that, necessarily, takes with it a dismissal of the cross-complaint and a dismissal of the third-party complaint by C. B. S. Columbia, Inc. against Eastern Electrical Contracting Company and the third-party complaint by Landes Heating Co., Inc. against Eastern States Electrical Contracting Company, Inc., with appropriate exceptions to all involved.”
A statement of the facts viewed in the most favorable light for the plaintiff, and the court’s reasons for finding them insufficient to make out any cause of action seem in order.
Sometime prior to February 19, 1953, the defendant C. B. S. Columbia, Inc. (C. B. S.) undertook to convert a garage-type building owned by it into a factory and office building. It was its own general contractor and retained five or more subcontractors to perform various phases of the work. Included among *795 such subcontractors was plaintiff’s employer, Eastern States Electrical Contracting Co. (Eastern) which undertook to do the electrical work, and the Landes Heating Co., Inc. (Landes) which undertook to do the heating, ventilation and sprinkler work.
C. B. S. employed one Both as chief planning engineer, who attended the job site daily and who supervised, checked and directed the progress of the work. The work required the use of scaffolds at heights of 10 or more feet. The scaffolds used in the job were furnished by the subcontractors. At the time of the accident there was in effect section 23-12.12 of the Industrial Code, Buie No. 23, which provided: “ Open sides of all scaffold platforms more than 10 feet high except steel workers needle beam scaffolds and except as otherwise permitted herein, shall be provided with a guard rail not less than 36 inches nor more than 42 inches high.”
Both, the C. B. S. planning engineer on the job, testified in his examination before trial that he knew that the scaffolds being used did not have any protective railings. One such railless scaffold belonged to defendant Landes. Pursuant to permission requested of it by plaintiff’s employer, that scaffold was lent to the latter. The scaffold was then given to plaintiff by his foreman for the performance of his duties on behalf of his employer. Because of the absence of the railing he fell and sustained injuries.
Section 240 of the Labor Law may not be used by the plaintiff as a foundation for a cause of action against C. B. S. because that section by its very terms, so far as here material, provides that (subd. 1): “ A person employing or directing another to perform labor of any kind in the * * * altering * * * of a building * * * shall furnish * * * or cause to be furnished * * * for the performance of such labor, scaffolding * * * which shall be so constructed * * * as to give proper protection to a person so employed or directed.”
The operative words of the statute are ‘ ‘ A person employing or directing another to perform labor.” C. B. S. neither employed nor directed the plaintiff to perform his work. He was the employee of Eastern and under its sole direction and control.
In Kluttz v. Citron (2 N Y 2d 379) there was a claim for damages for personal injuries grounded on section 240 of the Labor Law. The defendant had loaned plaintiff some ladders to paint defendant’s house. The court, in holding that the Labor Law had no application to the facts, said (p. 383): “ The words employing or directing another to .perform * * * painting ’ mean just that. Here the parties stipulated that this *796 painter was engaged as an independent contractor. Nowhere does it appear, and it is not claimed, that this defendant at any time gave the plaintiff any instruetions or direction as to the manner or method in which he was to perform the painting which he had contracted to do, but it was left solely to his judgment and experience.”
In Manguso v. Thirty-Third Equities (286 App. Div. 70) the Appellate Division, Second Department, said (p. 72): “ The second cause of action was properly dismissed. Section 240 of the Labor Law, upon which plaintiff relies, is inapplicable, as he was not employed by the appealing defendants nor was he directed by them to use the ladder in question. ’ ’
The same is true here. Plaintiff’s employer borrowed the ladder from Landes, another subcontractor. The plaintiff received his instructions and directions solely from his own employer and not from C. B. S., the general contractor. Section 240 of the Labor Law may, therefore, not serve as a predicate for liability on the part of either O. B. S. or Landes, the other subcontractor.
But says plaintiff, “ C. B. S. ’s liability is premised on its own negligence for failing to abate the use of illegal equipment when such use was actually known by it.”
While it is true that a general contractor, such as O. B. S. here, ‘ ‘ who is present and sees and realizes that a subcontractor is doing his work in an unlawful and dangerous manner may be liable for an injury resulting directly to a third person from such unlawful and negligent conduct ’ ’ (Rosenberg v. Schwartz, 260 N. Y. 162, 166) that obligation, in the absence of statute, does not extend to the protection of the one who is himself doing the work, such as this plaintiff.
In any event, the duty on the part of a general contractor owing to employees of other contractors is to protect them ‘ against perils unknown to ’ ’ them (Caspersen v. La Sala Bros., 253 N. Y. 491, 495; Anderson v. 143 Linden Blvd. Corp., 258 App. Div. 887) but it does not extend to a dangerous condition which is open and obvious. Here the plaintiff admitted that he knew of the dangers inherent in working on a railless scaffold. Even, however, if the plaintiff were able to overcome these hurdles, he would still meet with dismissal for the scaffold was a piece of equipment and no duty rests upon a general contractor to cause the repair of defective or improper equipment being used by the subcontractors or their employees. In Iacono v. Frank & Frank Contr. Co. (259 N. Y. 377, 381) the court said: ‘ We know of no duty resting upon an owner or a general contractor to inspect the machinery and tools furnished by a *797 subcontractor, which that contractor exclusively possesses and controls; nor of any duty, after an inspection disclosing defects, to make repair of a defective appliance. ‘ If the employer furnishes a ladder or a scaffold for the contractor’s employees to work on he must be careful to furnish a safe appliance (Huston v. Dobson, 138 App. Div. 810 ; Fuller v. Mulcahy & Gibson, 164 App. Div. 829), but if the contractor furnishes such appliances the employer does not thereby become responsible for their sufficiency. They are no part of the employer’s plant; failure to furnish them is not a defect in the employer’s plant.’ (Per Pound, J., in Hess v. Bernheimer & Schwartz Brewing Co., 219 N. Y. 415, 418.) ” (Italics ours.)
In Butler v. D. M. W. Contr. Co. (286 App. Div. 828, affd. without opinion 309 N. Y. 990), the appellants argued that a scaffold was not a tool or piece of equipment but rather a place of work within the meaning of section 200 of the Labor Law, or at least that that was a question of fact for the jury to determine. The Appellate Division rejected that contention, saying: “ While the general contractor in the construction of a building owes to the employees of a subcontractor a common-law duty of exercising reasonable care to make safe the places of work provided by him, and the ways and approaches to such places * * * the scaffold from which plaintiff fell was neither a place of work provided by the general contractor nor a way of approach to such place. Upon the evidence here presented, the scaffold did not constitute a place of work within the purview of section 200 of the Labor Law. ’ ’
In Italiano v. Jeffrey Garden Apts. (3 A D 2d 677) the Appellate Division, Second Department wrote to the same effect, saying (pp. 677-678): “ In our view, appellant Jeffrey Garden [owner and general contractor] owed to respondent the duty of furnishing him with a safe place to work (Wohlfron v. Brooklyn Edison Co., 238 App. Div. 463 affd. 263 N. Y. 547). That duty did not embrace, however, requirements ‘ beyond the bounds of what is practicable and reasonable ’ (Caspersen v. La Sala Bros., 253 N. Y. 491, 495), or necessitate that the owner intervene to deter a subcontractor’s employee from doing his work without a safety device which the subcontractor neglect to furnish (Borshowsky v. Altman & Co., 280 App. Div. 599, affd. 306 N. Y. 798). * * * The owner does not breach his duty when the place in which a subcontractor’s employee is injured is neither a place of work provided by the owner nor a way of approach thereto ’ ’.
The dismissal as to C. B. S. was, therefore, proper.
*798 As to defendant Landes, the plaintiff contends that the applicable principle of law is ‘ ‘ that one who furnishes another with machinery or equipment for his use is obliged to furnish him with safe machinery and equipment even though, initially, he may not owe any duty to furnish him any such equipment. Put otherwise, while not obliged to furnish equipment, once furnished, it has to be in a safe condition,” citing Manguso v. Thirty-Third Equities (286 App. Div. 70, supra); MacKibbin v. Wilson & English Constr. Co. (263 App. Div. 1014); Gardner v. Carlson Hoist & Mach. Co. (248 App. Div. 622); Sdoia v. Cawley (263 App. Div. 928); Duggan v. National Constructors & Engineers (223 App. Div. 163); McGlone v. William Angus, Inc. (248 N. Y. 197).
None of the cases thus cited by the plaintiff are apposite.
In Manguso (286 App. Div. 70, 71, supra), “ to the knowledge of the employees of the appealing defendants, the ladder furnished plaintiff was unsafe unless held and that, despite such knowledge, the employee who had been holding the ladder left while plaintiff was standing thereon, causing him to fall almost immediately thereafter when the ladder moved. Under Such circumstances, the jury was warranted in finding that the employees were guilty of negligence (cf. Kostka v. Stack, 266 App. Div. 883, affd. 291 N. Y. 808), even though originally there may have been no duty on their part to furnish or hold the ladder ”. The negligence there was not in furnishing an unsafe ladder, but in not holding the ladder after agreeing to do so.
Here, while the scaffold was defective, the plaintiff did not reply upon any assurance by O. B. S. as to its condition.
In MacKibbin (263 App. Div. 1014, supra), plaintiff was injured when a skid plank furnished by defendant tipped as he stepped on it in the course of his work. The Appellate Division sustained a recovery by the plaintiff because of a factual finding that the skid plank “was an inherently dangerous device, in a condition of which the appellant had knowledge and of which plaintiff had no knowledge.” (Italics ours.) The distinction between that case and this is too obvious to require comment.
In Gardner (248 App. Div. 622, supra) plaintiff sustained injuries “ due to the fall of a hod hoist on which he was riding.” The court held (p. 623) that a cause of action had been made out as to one defendant because ‘ ‘ it defectively installed the hoisting apparatus ” and as to the owner-defendant, because the latter’s superintendent had “ specifically directed this plaintiff to use it, although he had knowledge of the faulty attachment of the hoisting apparatus to the beam at the top of the shaft.” *799 The hoisting apparatus in that case, as it was being used, was a place of work within the theory and contemplation of such cases as Wohlfron v. Brooklyn Edison Co. (238 App. Div. 463, affd. 263 N. Y. 547, supra). In such a case, “it is said that the obligation of the owner or general contractor [is] to furnish a safe place to work ” (Zucchelli v. City Constr. Co., 4 N Y 2d 52, 56) but that “ is clearly distinguishable from that arising through negligent acts of a subcontractor occurring as a detail of the work ” (Wohlfron v. Brooklyn Edison Co., supra, p. 466).
In Sdoia (263 App. Div. 928, supra), the affirmance by the Appellate Division is without opinion but the dissent makes it evident that the plaintiff was not made aware of the defective condition of the ladder which was given to him to use.
In Duggan (223 App. Div. 163, supra), the defendant subcontractor was held liable because of a defective ladder owned by him which to his knowledge and anticipation was to be used by all the persons (p. 166) “ engaged in occupations in the construction of the structure but not in his employ.” The court, therefore, quite understandably held that (p. 166): “ Where the nature of the construction and the commingling of the employees in a common object at the time of the erection of a ladder requires it, a person who constructs a scaffold or erects a ladder to be used in the performance of labor in the erection of a building has a duty incapable of delegation, no.t merely to his own employees, but to all others making use of the structure for that purpose, to make such instruments of performance safe. The mere fact that it was used by one not an employee of the defendant does not discharge the latter of liability where a duty exists of making a safe scaffold or ladder for use of employees in the performance of the work.”
In our case the scaffold was not used or intended to be used by all of the people working for the various contractors on this job; there was no “ commingling of the employees in a common object ”.
McGlone (248 N. Y. 197, supra) was a case of a floor used in common by all of the employees or workers on the job, and the court held (p. 199): “ Under these circumstances and conditions, if reasonable care would have anticipated such use then it was the duty of the defendant to erect its platform or flooring with due regard of the user by others. That is, it was under the duty to use reasonable care to construct it safely for those whom it had reason to anticipate would naturally and customarily use it in the course of the work.”
*800 Again, we have a situation of a flooring constructed by a defendant with knowledge that it was to be used in common by all of the workers on the job in the course of their work. Here there was no such situation. Here there was no hidden danger, there was no user in common, there was no obligation to lend the scaffold and when Landes did ‘ ‘ whatever defects did exist in. the ladder were equally apparent to the plaintiff, who had opportunity to inspect it.” (Maccarrone v. Accurate Constr. Corp., 138 N. Y. S. 2d 102, 104.)
Landes merely gave a passing permission to plaintiff, through his employer, to use the scaffold. Such permission did not obligate the lender Landes to guard against injury from a patent peril or from a source manifestly dangerous”. (Campo v. Scofield, 301 N. Y. 468, 472.) Though that case dealt with the obligation owed by a manufacturer to a remote user, the principles of law are the same {Harper v. Remington Arms Co., 156 Mise. 53, affd. 248 App. Div. 713; Soto v. Brown Co., 283 App. Div. 896; Rosébrock v. General Elec. Co., 236 N. Y. 227; Storm v. New York Tel. Co., 270 N. Y. 103).
The dismissal of the complaint as against the defendant Landes was, therefore, proper. Since the principal causes of action have been dismised, it follows that the third-party complaints must likewise be dismissed. Plaintiffs may have a 30-day stay of execution and 60 days to make a case.