Murray T. Feiden, J.
This is an action for damages for personal injuries sustained by plaintiff when he fell from a scaffold upon which he was working in St. Joseph’s Church, Brooklyn, New York. The case was submitted to the jury only on the issue of liability, leaving the amount of damages for determination at a later trial.
The church had engaged the defendant, Associated Church Arts (hereinafter referred to as “Associated”), as general contractor to do certain repair, painting and decorating work in said church. Associated subcontracted with plaintiff’s employer, Hans Schmidt Studios (hereinafter referred to as “ Schmidt”), a decorator-painter firm, to paint, gold-leaf and decorate the ceiling and columns of the church. It was conceded that Associated made a contract with defendant Charles Schad, Inc. (hereinafter referred to as “Schad”) under which the latter was to erect and maintain the scaffolding in the church for use of the painters and four other subcontractors on the job. In its answer, Schad admits that it supplied the material for *1061 and erected the scaffolding in question in accordance with the desires and direction of Associated. The defendant Associated cross-complained against the defendant Sehad.
The plaintiff proved that the scaffold was more than 20 feet above the ground or floor; that although he had been working in the church since October 14, 1959, he had not used the particular scaffold involved until November 20, 1959, the day of the accident; that while walking on the scaffold one of the planks tipped or turned and he fell from the scaffold to the ground; that he tried to prevent himself from falling but there were no guard or safety rails, as required under common law and subdivisions 1 and 2 of section 240 of the Labor Law. Plaintiff also produced an expert who testified that the scaffold did not conform or comply with the accepted safety requirements for scaffolds constructed in New York City or anywhere else in the United States.
The case presented an unusual and controlling factual situation in that the painting subcontractor, Schmidt, was not required to supply scaffolding for its employees, probably because it was an art-decorating firm rather than an ordinary painting contractor. Consequently, the general contractor, Associated, obligated itself to supply the scaffolding for use by employees of Schmidt and other subcontractors.
The plaintiff proceeded on the theory that Associated was liable under both the common law and section 240 of the Labor Law and that Sehad was liable only under common law. The jury, however, was charged only as to defendants’ common-law liability. In addition to asking the jury to find a general verdict, four specific questions were submitted to the jury to answer in accordance with CPLR 4111 on the theory that, once the jury made its findings on the facts, the court would then decide the applicability of the Labor Law as a question of law; and the court so stated to counsel in colloquy after the charge.
The written questions submitted to the jury and their answers were as follows: 1. Was the defendant Charles Sehad, Inc. guilty of negligence? A. Yes; 2. Was the defendant Associated Church Arts guilty of negligence? A. Yes; 3. Was the failure to have safety rails on the scaffold the cause of plaintiff’s fall? A. Yes; 4. Was the plaintiff guilty of contributory negligence? A. No. The court reserved decision on the defendants’ motions to vacate the verdict and to dismiss the complaint.
The common-law liability of Associated will be considered first. Said defendant’s liability rests upon a determination of who in reality furnished or supplied the scaffold. If this were the usual case where a general contractor hires a painting sub *1062 contractor, with the latter agreeing to supply the scaffolds to his own employees or permissively using the scaffolds of another subcontractor, there would be no problem. In such situations the general contractor, absent any direction to the subcontractor’s employees or control over the details of the work, would not be responsible for the scaffolding supplied by said contractor to his own employees. The cases cited by Associated, such as Iacono v. Frank & Frank Contr. Co. (259 N. Y. 377), Gambella v. Johnson & Sons (285 App. Div. 580), Ehrlich v. C. B. S. Columbia (16 Misc 2d 793, affd. 9 A D 2d 943, affd. 8 N Y 2d 1113), Sweeney v. Spring Prods. Corp. (257 App. Div. 104, affd. 282 N. Y. 685), Portnoy v. United Engrs. & Constructors (90 N. Y. S. 2d 486) all involve situations where the defendant was not obligated to supply the equipment or the equipment was supplied by the subcontractor who employed the plaintiff or where the subcontractor casually borrowed equipment from the general contractor. The case of Mercante v. Hygrade Food Prods. Corp. (258 App. Div. 641), cited by Associated, merely involved a motion to strike defenses and reiterated the general principles stated in and applicable to the factual situations in the aforesaid Iacono and Sweeney cases. It is noteworthy that the leading case of Iacono v. Frank & Frank Contr. Co. (supra, p. 381) in referring to the hoist which caused the accident in that case, exculpated defendants with the following language : “ Neither of the defendants had caused its installation, or supplied it for the use of subcontractors ’ ’. The disjunctive use of the words “caused its installation, or supplied it” is significant. (See, also, Pedersin v. Michel Brewing Co., 156 App. Div. 383, 386, 220 N. Y. 638.) The implication is clear that causing an appliance to be installed is equated with supplying it, which is precisely the situation we have in the instant case.
The evidence in this case belies the posture of Associated that it had nothing to do with the supplying of the scaffolds because it conceded that it had agreed to supply them for Schmidt’s employees as well as for other subcontractors. Having obligated itself to supply the scaffold it is immaterial whether Associated itself erected and installed the scaffold or whether it leased it or “ caused ” or hired another subcontractor to erect and install it. In this particular case, the subcontractor .Schad is the agent of Associated and not the agent of Schmidt. Schad was merely the instrumentality through which Associated supplied the scaffold. To say in this case that it was .Schad and not Associated which supplied the scaffold would not be realistic so far as the plaintiff is concerned, regardless of the legal obligation as between the two defendants.
*1063 Jhe case of Meny v. Carlson (6 N. J. 82, 95-99) is exactly in point. There too, the general contractor, Carlson Company, obligated itself to furnish the scaffold but hired a subcontractor other than the plaintiff’s employer to erect the scaffold. The very same arguments advanced by Associated in this case were advanced in the Meny case. The court held that the general contractor, having assumed the obligation of furnishing scaffolding for the plaintiff’s use, could not relieve itself of its duty to furnish a safe one by delegating its duty to an independent contractor.
In Galbraith v. Pike & Son (18 A D 2d 39), the decedent, a free-lance painter (having the status of an independent contractor) fell to his death from a scaffold which did not have guard or safety rails, as in the instant case. Under the contract between the general contractor, John B. Pike & Son, Inc. (hereinafter referred to as “ Pike ”), and the painting subcontractor, Drew, it was the obligation of the latter to supply the scaffold. Drew, finding that his scaffold was too low, borrowed one from Pike, the general contractor, and turned it over to the decedent. In other words, Drew, because of its contractual obligation to supply the scaffold, and Associated, in the instant case, are in exactly the same position, despite the fact that Drew was a subcontractor in the Galbraith case and Associated the general contractor in the instant case. It also appears that Pike, although it was the general contractor in the Galbraith case, is nevertheless in relatively the same position as the subcontractor Schad in the instant case, both having built the scaffold, although they had no contractual obligation with the plaintiff’s employer to supply the same. The Appellate Division held that a prima facie case was made out against the defendant Pike under the common law and against Drew both under the Labor Law and common law, holding (p. 43) that “ Since Drew was under a contractual obligation to supply a scaffold for the decedent’s use, Drew was bound to exercise reasonable care to see to it that the scaffold which he supplied was safe.”
Once it is determined that Associated supplied the scaffold or caused it to be supplied, its common-law liability becomes clear under well-established principles that one who supplies equipment must see to it that it is safe and fit for the use intended. (Hess v. Bernheimer & Schwartz Brewing Co., 219 N. Y. 415, 418, 419; Fermo v. Manufacturers Trust Co., 15 A D 2d 814; Iacono v. Frank & Frank Contr. Co., supra, p. 381; Semanchuck v. Fifth Ave. & 37th St. Corp., 264 App. Div. 329, 333, mod. on other grounds 290 N. Y. 412; La Rocca v. Farring *1064 ton, 276 App. Div. 126, affd. 301 N. Y. 247; Galbraith v. Pike & Son, supra, p. 43.) The determination of the jury with respect to the common-law negligence of Associated is warranted by the testimony that the scaffold did-not have guard or safety rails which safe practice and usage require in New York City irrespective of the Labor Law.
The jury having determined that the absence of the rails was the proximate cause of the plaintiff’s fall, the court is confronted with the problem of whether section 240 of the Labor Law is applicable. The court is aware of the holding in Kluttz v. Citron (2 N Y 2d 379, 383) that “ The words ‘ employing or directing another to perform * * * painting ’ mean just that.” However, in Galbraith v. Pike & Son (supra, pp. 42, 43) it was clearly enunciated that the supplying of a scaffold automatically carried with it, by necessary implication, a direction to use it, thereby bringing the supplier within the orbit of section 240 of the Labor Law. The court in that case held that a prima facie case under the Labor Law was made out against Drew, who like Associated in the instant case was obligated to supply the scaffold, as well as under common-law principles, even though Drew obtained the scaffold from someone else. It was emphasized that there was no need to show that Drew directed the decedent in the manner of the performance of his work because, by supplying the equipment, he in effect directed the workman to use it. See, also, Mendes v. Caristo Constr. Corp. (5 A D 2d 268, 270, affd. 6 N Y 2d 729), where the Appellate Division, Second Department uses language which indicates that liability under section 240 of the Labor Law could be established by proof that defendant either supplied or directed the use of the equipment. This holding is discussed and adopted in Adamo v. Fuller Co. (47 Misc 2d 1036, 1038).
It is illuminating that in Olsommer v. Walker & Sons (4 A D 2d 424, 428, affd. 4 N Y 2d 793) and Galbraith v Pike & Sons (supra, pp. 42, 43) stress is placed upon the determination of which contractor had the obligation to supply the scaffold. Thus in the Olsommer case the general contractor who gratuitously loaned the scaffolds to the subcontractor was exculpated under section 240 of the Labor Law where it “ was under no contractual obligation to supply them ” (p. 428). Conversely, in the Galbraith case, the subcontractor Drew, who was under a contractual obligation to supply scaffolds, was held to have violated said section even though the scaffold was obtained from the general contractor. The criterion seems to be whether or not there is a contractual obligation to supply the equipment. Whether a defendant falls into the over-all category of a general *1065 contractor or that of a subcontractor is not the controlling factor. This is also indicated in section 23.1 of the State Industrial Code, promulgated under the Labor Law. (12 NYCRR. 23.1.)
The reliance by Associated on the case of Cole v. Long Is. Light. Co. (24 Misc 2d 221, 228) is misplaced. That case turned upon the issue of whether or not the general contractor gave directions as to the details of the work. Although there was a statement to the effect that merely supplying a scaffold without more, would not be tantamount to a direction sufficient to create liability, in a later decision by the very same Justice (Adamo v. Fuller Co., supra, p. 1038) such statement was withdrawn on the authority of the Galbraith case and it was held that the furnishing of an appliance, in and of itself, may be regarded as a direction for its use.
It might be argued that both the Galbraith and Mendes oases have liberalized or broadened the meaning of the word ‘ ‘ directed ’ However, such interpretation of the word is in complete harmony with the intent of section 240 of the Labor Law to protect employees using scaffolds, and with the expression in Koenig v. Patrick Constr. Corp. (298 N. Y. 313, 318, 319), that such statute should be liberally construed. On the other hand, to adopt the reasoning of Associated would directly contravene the purpose of the statute. It would in effect permit a general contractor who has assumed the responsibility of supplying scaffolds to the employees of a subcontractor to avoid its responsibility by delegating it to another subcontractor. It would leave an employee, who has no voice in the general contractor’s selection of a scaffolding subcontractor, without the protection that section 240 was designed to supply. The jury having determined the factual issues by answering question No. 3 in the affirmative, it follows that Associated violated section 240 of the Labor Law as a matter of law.
The plaintiff proceeded against the defendant Schad only on the theory of common-law negligence. The court finds that the jury’s affirmative answers to questions 1 and 3 were warranted by the evidence. One who undertakes to erect or furnish scaffolding is under a duty to erect or furnish one fit for the use intended and free from defects that would render it unsafe and dangerous under well-settled common-law principles. (See cases cited in connection with the common-law liability of the defendant Associated and also, Petersen v. Rand Constr. Co. (41 Misc 2d 619, revd. on other grounds in 24 A D 2d 454) which involved a patently defective appliance). It is urged that there is no liability where the defect is patent on the authority *1066 of Ehrlich v. C. B. S. Columbia (16 Misc 2d 793, affd. 9 A D 2d 943, affd. 8 N Y 2d 1113, supra). The statement contained in the lower court decision that the contractor from whom a scaffold was borrowed owed no duty to plaintiff to guard against a patent defect is limited to the facts of that case. A reading of the lower court decision (pp. 799-800) indicates that it is limited to a situation where the scaffold is not used in common by other contractors and where the contractor merely gives ‘1 passing permission” to use a borrowed scaffold. In the instant case the scaffold was erected for the use of several subcontractors to be used in common and there was a contractual obligation to erect such scaffold. Furthermore, the decision in the Ehrlich case is based in part upon the law in product liability cases that a manufacturer is not liable to a remote user for a patent defect. In the instant case we do not have a ‘ ‘ remote user ’ ’ situation. Here Schad erected the scaffolding for a specific and immediate use, at a specific location with full knowledge of how, when and by whom it was to be used and it was used in the manner in which it was intended to be used. (La Rocca v. Farrington, 276 App. Div. 126, affd. 301 N. Y. 247, supra, and Petersen v. Band Constr. Co., supra.)
The court finds that the jury’s negative answer to question No. 4 as to whether plaintiff was guilty of contributory negligence was within its province as a question of fact under common-law principles applicable to an employee who is subject to his employer’s orders. (Broderick v. Cauldwell-Wingate Co., 301 N. Y. 182, 188; Salerno v. New York Cent. R. R. Co., 40 Misc 2d 785, 792, revd. on unrelated grounds in 21 A D 2d 850; Utica Mut. Ins. Co. v. Amsterdam Color Works, 284 App. Div. 376, 379, affd. 308 N. Y. 816; Fitzwater v. Warren, 206 N. Y. 355, 358; Kaplan v. 48th St. Corp., 267 App. Div. 272, 274; Luneau v. Elmwood Gardens, 22 Misc 2d 255 and Galbraith v. Pike & Son, supra.) There was also present in the instant case the mitigating fact that plaintiff was unaware of the loose planks which set in motion the chain of events leading to the accident. So far as any violation of the Labor Law is concerned, contributory negligence would not be a defense. (Koenig v. Patrick Constr. Corp., 298 N. Y. 313, 317, supra.)
With respect to the cross complaint of Associated against Schad, the court finds that Associated has failed to sustain its burden of proof. In order to recover under the cross complaint, Associated would have to prove that Schad was the active or primary tort-feasor and that Associated was not in pari delicto or guilty of such omission to act as would in effect constitute active negligence. (Braun v. City of New York, 17 A D 2d 264, *1067 266; Crawford v. Blitman Constr. Corp. 1 A D 2d 398, 400; Sid v. Stokes Assoc., 145 N. Y. S. 2d 368; Brady v. Weiss & Sons, 6 A D 2d 241.) Another element to he considered is the factual disparity between the delinquency of the defendants Associated and Schad (McFall v. Compagnie Maritime Belge, 304 N. Y. 314, 330; Lee v. Tandy & Allen Constr. Co., 14 Misc 2d 348; Sciden v. Savings & Loan Assn., 10 Misc 2d 720).
The only proof in this case is that Associated contracted with Schad to furnish, erect and remove wood scaffolding inside the church, without specifying the manner in which it is to be constructed. Schad’s estimate, Exhibit B in evidence, addressed to Associated, indicates some specifications with respect to the planking but does not provide for guard or safety rails. This letter was orally accepted by Associated and constitutes part of the agreement between defendants. It would thus appear that the scintilla of proof on this issue raised by the cross complaint indicates that Associated failed to insist upon guard or safety rails or at least knew that Schad’s estimate did not call for such rails. Associated would therefore be in pari delicto. Both defendants were afforded the opportunity of submitting additional proof with respect to the cross complaint but informed the court, by written communications, that they did not desire to do so.
The defendants’ motions are denied. The cross complaint is dismissed.