Arthur W. BEIN, Plaintiff,

v.

The CITY OF NEW YORK, Slattery Construction Corporation, and Turner Construction Company, Defendants.

No. 64 Civ. 1399.

United States District Court
S. D. New York.

April 27, 1967.

On Motion for New Trial
July 13, 1967.

Alan B. Decker, New York City, for plaintiff.

Leo A. Larkin, New York City, Corporation Counsel, for New York City.

O'Hagan & Reilly, New York City, for defendant Turner.

Schaffner & D'Onofria, New York City, for defendant Slattery.

MANSFIELD, District Judge.

After listening to extended argument and giving careful consideration to the briefs and authorities that have been submitted by the parties, all of which have been reviewed by the Court, the Court is prepared at this time to rule on the defendants' motions to dismiss.

Ordinarily, where there are issues of fact to be decided, the Court leaves these for decision by the jury. In this case, however, after carefully reviewing the notes of the trial and having portions of the transcript read back by the court reporter in the robing room, the Court has reached the conclusion that even if the facts are considered in the light most

favorable to the plaintiff and all favorable inferences that could be drawn from those facts favorably to the plaintiff are drawn, the Court must grant the motions to dismiss made by all three defendants for the reason that there is insufficient evidence here to make out a prima facie case or to establish a claim legally against any of the defendants.

Since the Court is required under Rule 41 of the Federal Rules to make findings in accordance with Rule 52(a) of the Federal Rules, I will proceed to make the findings.

There is no question about the fact that this is a diversity suit for personal injuries sustained by the plaintiff on December 31, 1963, as the result of slipping and falling on ice in a stairwell near the site of the New York State Theatre as it was in the course of being constructed. The plaintiff is a resident of New Jersey and the defendants are all residents of New York.

There appears to be no dispute about the fact that on December 31, 1963, the plaintiff slipped and fell on ice on the stairway of a stairwell leading from an underground garage to a point on Columbus Avenue between 62nd and 63rd Streets in New York City.

At the time of the accident, according to the plaintiff's testimony, which was corroborated by the testimony of Mr. Faraci, the stairway, the construction of which had not been completed, was covered with an accumulation of ice and the accident resulted from his slipping on the ice.

The plaintiff claims that the accident was caused by negligence on the part of the City of New York, which had contracted with the Slattery Construction Corp. to build the stairway and stairwell.

He also claims negligence on the part of Slattery, the contracting concern, which was engaged at the time of the accident in constructing the stairway and well and the adjacent underground garage, pursuant to its contract with the City of New York.

More specifically, the plaintiff claims that these defendants were negligent in permitting accumulation of ice and snow, in not removing it, and in failing to warn the plaintiff of its existence, and in failing to affix adequate handrails on the stairway and platforms.

The plaintiff also claims that the accident resulted from the failure of the defendant, Turner Construction Co., which was the general contractor in charge of the construction of the New York State Theatre, to provide him, as an employee of an electrical subcontractor on that job, with a safe place in which to work. More specifically, the plaintiff contends that the defendant violated Section 200 of the Labor Law of the State of New York, McKinney's Consol. Laws, c. 31, by failure to provide him with a safe ingress to and egress from the New York State Theatre work site.

There appears to be no dispute about the fact that the obligations of the defendants toward the plaintiff are governed by New York law.

Turning to the proof and considering it in the light most favorable to the plaintiff and drawing all inferences that can reasonably be drawn in favor of the plaintiff, the record reveals that the plaintiff testified that at the time of the accident and for about a year and a half prior thereto he had been employed by John G. Hellman Co., Inc., an electrical subcontractor engaged in doing electrical work in the construction of the New York State Theatre pursuant to a contract with Turner Construction Company as the general contractor on that job.

Plaintiff had, for this year and a half period, worked as an electrician on that job. Hellman provided lockers and shanties to the plaintiff and its other electrical employees for changing their clothes and storing their tools. These lockers were not located, however, in the New York State Theatre. They were located in an underground garage area adjacent to the New York State Theatre, which garage was that already referred

to as being constructed by the defendant Slattery pursuant to its contract with the City of New York.

The plaintiff testified that on December 31, 1963, the electrical work force employed by Hellman on electrical work on the construction of the theatre was permitted to knock off early because of the impending holiday. This testimony was corroborated by that of a fellow worker, Mr. Joseph Faraci.

The plaintiff also testified that about 2:30 p. m., upon completion of his electrical work in the theatre building, he went to the locker space in the underground garage to change his clothes and depart for his home in New Jersey. The lockers, which were in the underground garage adjacent to the theatre, were reached by an underground passageway or corridor from the New York State Theatre.

After changing from his work clothes to street clothes at the lockers, the plaintiff, who was homeward bound, headed for the 8th Avenue subway station located near 59th Street and Columbus Avenue. The most direct and quickest route was by way of the stairwell where the accident occurred. The bottom of that stairwell was located off an underground corridor that extended from the locker area. The plaintiff walked from the lockers along the corridor to the point where these stairs emerged and rose in an uncovered stairwell to Columbus Avenue. The stairs had ice on them. There were about nine steps from the underground garage to an intermediate level or platform and then another eight or nine steps to the street level.

The masonry work on the steps had not been completed and handrails had not yet been installed. The plaintiff started walking up the steps and as he reached the intermediate platform level he fell and sustained a fracture of the skull and other injuries.

The plaintiff testified that prior to the time of the accident he was familiar with the icy condition of the stairs, he knew that there were no handrails, he knew

that when he went up the icy stairs he took the risk of slipping and falling, he knew that there were other routes that were protected from ice, snow and elements, but that he took this route because it was a shortcut that would save him time compared with the time that he would use if he took the other safer routes.

More specifically, he testified that there was an underground, covered corridor leading from the locker area to the 7th Avenue subway, from which he could ascend to a point near 65th Street and Columbus Avenue, and that he had used this route on prior occasions.

He also testified that there was an underground corridor from the locker area to a point near Philharmonic Hall, which was facing on Columbus Avenue, and that he used this corridor on other occasions.

He further testified that on prior occasions he had used a route from the main entrance of the New York State Theatre into that building, downstairs and via corridors to the lockers. He testified that all of this route via the State Theatre was covered and that to the extent it was outdoors, before you got to the main entrance, there was a wooden walk, with handrails that did not have an accumulation of ice such as caused his accident.

Plaintiff testified that during the year and a half when he had been working on the New York State Theatre job he had usually used one of these other, covered routes in going to and from the locker area; that on most occasions he would go with a fellow worker out the corridor to the 7th Avenue subway and up to the street or via the Philharmonic corridor, because these provided a more direct route to a parking garage where the fellow worker parked a car in which they rode together to and from work.

The plaintiff also testified that on those occasions prior to the accident, when he used the 7th Avenue subway as a means of getting to work, he usually used the route through the main entrance of the New York State Theatre, down

the stairs and through the corridors to the locker area, all of which was a covered route, but that he sometimes used the route down the stairwell which was the site of his accident, usually when he was in a hurry or wanted to save time by taking this shorter route.

The plaintiff's testimony was corroborated in certain key respects by that of Joseph Faraci, a fellow worker called by him as a witness, who had worked as an electrician on the same job for about one year prior to December 31, 1963.

Faraci testified that there had been about one inch of ice on the stairs of the site of the accident continuously for about a month prior to the accident; that this icy condition was obvious, not hidden, that he could fully observe it; that there were no handrails; that there were other routes from the lockers to the street which were covered and protected from the elements, but that he sometimes used the stairwell, which was the scene of the plaintiff's accident, because it was a shortcut from the lockers to the street; and that he realized he might slip and fall on the icy steps but that he took his time, watched his step, and used caution when he walked up and down those stairs.

Both the plaintiff and Faraci testified they had seen other fellow workers use the stairwell which was the site of the accident.

Faraci further testified that when he started working for Hellman on the New York State Theatre job he was shown the underground, covered route from the job site to the locker area.

The evidence offered by the plaintiff reveals certain other undisputed facts:

First, no employment or other contract relationship existed between the plaintiff and Slattery or between the plaintiff and the City of New York. The plaintiff was employed by Hellman, which had no contract with Slattery or the City of New York at the time of the accident.

Secondly, the plaintiff was not employed by anyone to do any work at the site of the accident or in the underground garage adjacent to it.

Thirdly, neither Hellman nor Turner had engaged, at or prior to the time of the accident, in any construction or other work on the stairwell which was the site of the accident, or on the underground garage. The lockers or shanties were provided by Hellman for its electrical employees. The locker area was not the place where they, including the plaintiff, performed their work.

Fourthly, the construction of the stairwell, which was the scene of the accident, and the construction of the underground garage were solely performed by Slattery.

And fifthly, there is no evidence that the City of New York owned the stairwell which was the site of the accident, or the underground garage or locker area.

The motions of the City of New York and Slattery are granted for the reason that when the evidence is viewed in the light most favorable to the plaintiff, he was at most a gratuitous licensee using the icy stairwell which was the scene of the accident with their acquiescence or permission. Even this conclusion requires the Court to stretch the evidence considerably in plaintiff's favor, for the reason that there is but scant evidence of any actual notice on the part of the City or Slattery that the plaintiff was using the stairway.

A strong case could be made for a finding that at least as to the City he was a trespasser. But it is unnecessary to so find for the reason that plaintiff's proof is undisputed that the icy condition and the lack of handrails that allegedly caused the accident was open, obvious and in fact known to the plaintiff for some time prior to and at the time of his accident.

It is equally clear that the plaintiff realized and appreciated the risk of slipping and falling involved in his using the icy stairway. There is no claim here of any hidden dangers or traps.

■ The law is clear beyond any doubt that Slattery, as the contractor in possession and control of the stairwell, was not subject to liability to the plaintiff as a gratuitous licensee for harm caused by an open and obvious dangerous condition known to him, the risk of which he realized. That law is found in the American Law Institute Restatement of Torts, 2d Section 342(c), and it is also stated in cases in the State of New York holding that a licensee entering upon property with knowledge of an open and obvious dangerous condition takes the property as is, assuming the obvious risks involved. The decisions on that are Fox v. Warner-Quinlan Asphalt Co., 204 N.Y. 240, 97 N.E. 497, 38 L.R.A.,N.S., 395; Garthe v. Ruppert, 264 N.Y. 290, 291, 190 N.E. 643. There are many others. Those are simply selected as examples.

■ The City of New York's motion is granted for the further reason that there is no evidence that it owned or controlled the accident site. In fact it contends it did not, and that the property was owned by the Lincoln Center for the Performing Arts. As a mere contracting agent, the City of New York would have no duty to protect the plaintiff against an open and obvious danger on property that was the subject of a contract negotiated by the City.

A strong case could be made for dismissal of the complaint against all defendants on the further ground that the facts, including plaintiff's advance knowledge of the icy steps and lack of handrails and his decision to risk slipping and falling, show that he was contributorily negligent as a matter of law. In support of such a conclusion, the Court notes decisions to such effect under parallel circumstances in the following cases: Owen v. Westchester Country Club, Inc., 264 App.Div. 796, 35 N.Y.S.2d 200, affd., 289 N.Y. 819, 47 N.E.2d 432; Cohen v. State of New York, 19 Misc.2d 530, 193 N.Y.S.2d 329; Doremus v. Auerbach, et al., 223 N.Y. 709, 120 N.E. 861; Fillis v. Wahlig, 267 App.Div. 781, 45 N.Y.S.2d 609; Lyon v. Socony-Vacuum Oil Co.,

Inc., 268 App.Div. 788, 49 N.Y.S.2d 91, affd., 293 N.Y. 930, 60 N.E.2d 133.

In view of the Court's conclusion that the complaint against Slattery and the City must be dismissed on grounds already noted, we refrain from passing on the question of whether it is not also dismissable on the ground that plaintiff's conduct constituted contributory negligence as a matter of law.

■ Turning to the suit against the defendant Turner, the motion to dismiss the complaint is granted and the complaint is dismissed for the reason that the evidence against Turner, viewed in the light most favorable to the plaintiff, fails to show any violation by Turner of its duty under Section 200 of the Labor Law of the State of New York, to provide the plaintiff with a safe place in which to work, or any violation of any other duty or care toward the plaintiff.

■ Subdivision 1 of Section 200 has repeatedly been held by the Courts of New York to constitute a codification or declaration of existing obligations of an employer to provide his employees with a safe place in which to work, rather than to create new obligations. In this respect, it differs from some of the other sections of the Labor Law, such as Section 240, which create new obligations of a more precise nature with respect to specific types of equipment, obligations that could not be avoided on the ground that the employee had full knowledge of the conditions causing the accident. That section, and similar sections, however, is quite different from the general declaration of existing law found in Section 200.

In considering the employer's obligation to provide a safe place to work under New York law, we can, therefore, look to decisions both before and after the adoption of Section 200.

There is no question about the fact that Turner was under an obligation to provide the plaintiff with a safe means of ingress to and egress from his place of work, which in this case was the New York State Theatre.

■ The evidence offered by the plaintiff shows that at the time of the accident Turner, as the general contractor in charge of the construction of the New York State Theatre, provided the plaintiff, as an employee of its electrical contractor on the job, with several safe means of ingress to and egress from his place of work, as well as from the locker area. These included (1) underground corridors to the 7th Avenue subway and street; (2) to the main entrance of the New York State Theatre itself, and thence by boardwalk with handrails to the street; and (3) by underground corridor to the Philharmonic Hall area. The plaintiff was fully aware of these safe means and in fact had used them over one and a half years of his employment. Having provided such safe means, Turner cannot, as a matter of law, be held responsible for the fact that the plaintiff admittedly chose to use another means of egress that posed certain open and obvious dangers known to and risked by him, which was located on property not owned or controlled by Turner.

■ As the Court noted in Ehrlich v. C B S Columbia, Inc., 16 Misc.2d 793, 183 N.Y.S.2d 671, affd., 9 A.D.2d 943, 195 N.Y.S.2d 822, and then later affirmed by the New York Court of Appeals at 8 N.Y.2d 1113, 209 N.Y.S.2d 789, 171 N.E. 2d 876, a general contractor owes the duty to employees of other contractors to protect them against perils unknown to them, but this does not extend to conditions that are open and obvious, as was the icy condition of the stairwell here.

The undisputed facts here are closely parallel to those in Doremus v. Auerbach, 176 App.Div. 512, 163 N.Y.S. 239, which was affirmed at 223 N.Y. 709, 120 N.E. 861, where the plaintiff, a workman in a building under construction, fell to his death through the open landing of a stairwell on the job. The Court noted that the situation there, similar to that here, was one where:

"It was not necessary for deceased to use this stairway, although it was probably the most direct route to the point to which he was bound."

■ An additional reason for dismissing the claim against Turner is the admitted fact that Turner had no control over the stairwell that was the site of the accident or any right to go upon that property which was under Slattery's control at the time of the accident. Under the admitted circumstances here, where Turner did provide other safe means of ingress and egress, its duty did not extend to protecting the plaintiff from dangers on someone else's property, which the plaintiff used as a shortcut instead of using the safe means provided, where the dangers on the other property were open and obvious.

■ The claim against Turner is also dismissable for the reason that it is stipulated that Turner was not the contractor in charge of the underground garage where the lockers were located. The lockers were provided in that area by Hellman, not by Turner. Turner's responsibility was limited to the plaintiff's place of work, which was the New York State Theatre, and the general contractor here, Turner, did not assume responsibility for the location in which Hellman might decide to place its lockers for the use of its electrical employees. The general principles involving the general contractor's responsibility for the conduct of its subcontractors in this regard is found in Zucchelli v. City Construction Company, 4 N.Y.S.2d 52, 172 N.Y.S.2d 139, 149 N.E.2d 72.

■ This accident was a most unfortunate occurrence, one which is an unhappy and miserable event for the plaintiff and, of course, one cannot but sympathize with the plaintiff's plight. On the other hand, the duty of the Court in this regard where there does not appear to be any issue that can reasonably be submitted as an issue of fact to the jury, is to dismiss the claim.

On Motion for New Trial

■ On April 27, 1966, D.C., 271 F.Supp. 542, judgment was entered dismissing this action at the end of the plaintiff's case. By notice dated May 15, 1967 and served on May 17, 1967, plain-

tiff moved for a new trial as to the defendants Slattery Construction Corporation ("Slattery" herein) and Turner Construction Company ("Turner" herein). Since the motion was made more than ten days after entry of judgment, it is denied for failure to comply with Rule 59, F.R.Civ.P., which directs that such a motion *"shall* be served not later than 10 days after the entry of the judgment" (emphasis added). Although plaintiff asserts that he did not receive a transcript of the record of the Court's opinion or dismissal until May 8, 1967, the issues had been the subject of trial memoranda submitted at the outset of trial; they were argued at length during trial; and the authorities relied upon by the Court had been the subject of considerable discussion well before the entry of judgment. Under the circumstances the motion for a new trial in essence seeks a reargument of points thoroughly covered before the Court's decision, and no valid excuse appears for failure to serve it within the 10-day mandatory period. Even if there were a valid excuse, it is very doubtful whether this Court could consider the motion at this time.[1] See Russell v. Monongahela R. R. Co., 262 F.2d 349 (3d Cir. 1958); Sutherland v. Fitzgerald, 291 F.2d 846 (10th Cir. 1961); Slater v. Peyser, 91 U.S.App.D.C. 314, 200 F.2d 360 (1952); Safeway Stores, Inc. v. Coe, 78 U.S.App.D.C. 19, 136 F.2d 771, 148 A.L.R. 782 (1943); Jusino v. Morales & Tio, 139 F.2d 946 (1st Cir. 1944).

On its merits the motion for a new trial must be dismissed for the reason that it fails to show any valid grounds warranting relief. Plaintiff first argues that his relationship with Slattery, the builder of the stairwell that was the scene of the accident, was that of an invitee, rather than a gratuitous licensee or trespasser, for the reason that Slattery was a member of a joint venture with Turner, Fuller and Walsh, that had contracted to build the "Lincoln Center construction complex"; and that it may be inferred therefrom that "Slattery's ultimate business interest was the construction of the entire Lincoln Center complex" rather than the stairwell and garage, extending to the areas in which plaintiff worked—a fact which purportedly entitles the plaintiff to an inference that he was an invitee when he entered upon the stairwell area in the process of being constructed by Slattery.

The first difficulty with plaintiff's contention is that it is unsupported by evidence and contrary to such evidence as appears in the record. The record reveals statements of counsel for the defendants, which plaintiff's counsel accepted and amplified, to the effect that although such a joint venture (called "Fuller-Turner-Walsh-Slattery") had existed in 1962 as a vehicle for handling subcontractors' bids, including the successful bid of plaintiff's employer, John G. Hellman Co., Inc., for electrical work on the New York State Theatre, Turner became the general contractor for construction of the theatre and on August 13, 1962, the subcontract with Hellman was assigned to Turner, long prior to December 31, 1963, the date of plaintiff's accident. During trial it was stated by defendants' counsel, and not disputed by plaintiff, that "There was no joint venture at the time when they were working, at the time of this accident. Turner was working on the New York State Theatre", pursuant to a general contract with the "Lincoln Center Theatre for the Per-

---

1. Rule 6(b) provides: "When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under rules 25, 50(b), 52(b), 59(b), (d) and (e), 60(b), and 73(a) and (g), except to the extent and under the conditions stated in them."

forming Arts, Inc." Slattery's contract and its responsibility was limited to construction of the stairwell and garage, which it undertook alone and independently as the sole contractor, without any sharing of obligations or profits with anyone else, either as a joint venturer or in any other capacity. There was no evidence that Slattery was subject to any directions or orders from the owner of the New York State Theatre, on which plaintiff was employed, or from Turner, the general contractor in charge of construction of that theatre, or from any agent or subcontractor connected with the theatre or any other construction in the vicinity. Nor is there any evidence that Slattery's payment for its job was related in any way to any other contractor, or that it shared profits with Turner or any other contractor. Although Hellman, plaintiff's employer, had arranged with Slattery for permission to place lockers for its employees' use in the underground garage constructed by Slattery, this arrangement had nothing to do with the stairwell, which was in a different location, where the plaintiff had no right to go.

Even if it be assumed *arguendo* that a joint venture relationship existed between Slattery and others engaged in constructing Lincoln Center, no authority supports the proposition that the plaintiff must therefore be treated as an invitee on the Slattery job site, nor is any basis offered to support such contention. The decisions cited by plaintiff are inapposite. Employers Mut. Liability Ins. Co. of Wisconsin v. DiCesare & Monaco, etc., 9 A.D.2d 379, 194 N.Y.S.2d 103 (1st Dept. 1959), dealt with the obligations of a general contractor toward workmen coming on the site to perform authorized work; and Ranftle v. City Athletic Club, 20 A.D.2d 716, 247 N.Y.S.2d 355 (2d Dept. 1964), involved an owner's obligations toward a delivery man injured on the premises. Neither case pertains to the issue raised here.

Plaintiff's contention that the question of whether he was an invitee or licensee on Slattery's job site should have been presented as an issue of fact to the jury, must also be rejected for the reason that the facts are not in dispute, and were assumed by the Court in a light most favorable to the plaintiff. The basis now urged by the plaintiff in support of his being treated as an invitee instead of gratuitous licensee or trespasser is that a joint venture relationship existed between Slattery and others in the construction of Lincoln Center. The record is clear, however, that the relationship ceased more than a year before the date of plaintiff's accident. In any event even if plaintiff's assumption is accepted, it raises a question of law, resolved by this Court against the plaintiff, rather than of fact, and decisions cited by plaintiff involving issues of fact as to the status of an invitee are inapposite.[2]

In urging a new trial of his claim against Turner, plaintiff first misstates this Court's prior holding. This Court did not, as plaintiff argues, hold that Turner's obligation to provide plaintiff with safe means of ingress to and egress from the job site extended to "some" of the means provided by it but not to others. This Court held and stated in its earlier opinion, that Turner fulfilled its obligations toward plaintiff by providing him with several safe means of ingress and egress under its control, and Turner was not responsible for the plaintiff's decision not to use the safe means thus authorized and provided but instead to use an unsafe means not owned or controlled by Turner, which posed open

**2.** Bowers v. City Bank Farmers Trust Co., 282 N.Y. 442, 26 N.E.2d 970 (1940); Collentine v. City of New York, 279 N.Y. 119, 17 N.E.2d 792 (1938); Reiss v. Reiss, 285 App.Div. 1090, 140 N.Y.S.2d 1 (2d Dept.1955); Crews v. Leader Laundry Service, Inc., 274 App.Div. 1066, 85 N.Y.S.2d 622 (2d Dept.1949); Baker v. Seneca Hotel Corp., 265 App.Div. 41, 37 N.Y.S.2d 819 (4th Dept.1942); Hochman v. Aronowitz, 251 App.Div. 914, 297 N.Y.S. 429 (3d Dept.1937); Duschnik v. Deco Restaurants, Inc., 248 App. Div. 940, 290 N.Y.S. 465 (4th Dept. 1936).

and obvious dangers known to and risked by the plaintiff.

In its opinion the Court referred to Ehrlich v. C B S Columbia, Inc., 16 Misc.2d 793, 183 N.Y.S.2d 671 (Sup.Ct.), affd., 9 A.D.2d 943, 195 N.Y.S.2d 822 (2d Dept. 1959), affd., 8 N.Y.2d 1113, 209 N.Y.S.2d 789, 171 N.E.2d 876 (1960), for the following holding:

> "In any event, the duty on the part of a general contractor owing to employees of other contractors is to protect them 'against perils unknown to [them]' * * * but it does not extend to a dangerous condition which is open and obvious."

Plaintiff's efforts to cast doubt upon the foregoing as an authoritative expression of New York law, applicable to the facts of this case, must be rejected. His argument that the Court in *Ehrlich* miscited the earlier *Caspersen*[3] and *Anderson*[4] decisions is not confirmed by a reading of those cases. The Court in *Caspersen* did not limit itself merely to a holding that a general contractor's duties is "to do what is necessary to correct dangers of any sort", but drew the distinction between open and obvious dangers and a situation "where the dangers are obscure to the worker and easily corrected"; and plaintiff's statement that the Court in *Anderson* never mentioned a word about "hidden or apparent defects" is inaccurate. Various decisions cited by plaintiff in an attempt to distinguish *Ehrlich* fail to cast any doubt upon its applicability here for the reason that they merely confirm the basic proposition that a general contractor may be held liable for an obvious condition to an employee who is given no choice but to risk its dangers. No such situation existed here where the plaintiff was not required to incur the risks involved in going upon the Slattery site but was provided by Turner with several safe means of ingress and egress.

 Since the Court did not base its dismissal upon the plaintiff's contributory negligence, it is unnecessary to deal further with the question other than to point out that contributory negligence is assertable as a defense to this lawsuit which is based on § 200 of the New York Labor Law, even though contributory negligence could not be asserted as a defense to actions based on certain other sections of that law (e. g., § 240); and that the decisions cited by the plaintiff for the proposition that he was not guilty of contributory negligence are either inapposite or fail to cast any doubt upon the authorities referred to by the Court in its opinion. Accordingly, plaintiff's motion is denied.

So ordered.

---

3. Caspersen v. La Sala Bros., 253 N.Y. 491, 171 N.E. 754 (1930).

4. Anderson v. 143 Linden Boulevard Corp., 258 App.Div. 887, 16 N.Y.S.2d 149 (2d Dept.1939).