EMIL LUSARDI et al., Respondents, *v.* REGENCY JOINT VENTURE et al., Appellants.

PATENT SCAFFOLDING Co., DIVISION OF HARSCO CORPORATION, Third-Party Plaintiff, *v.* ALUMINUM CORPORATION OF AMERICA, Third-Party Defendant.

First Department, November 24, 1970.

*Arthur N. Seiff* of counsel (*Katz & Gantman,* attorneys), for Regency Joint Venture and others, appellants.

*John E. Trecartin* of counsel (*O'Hagan & Reilly,* attorneys), for Patent Scaffolding Co., appellant and third-party plaintiff.

*Sanford A. Peyser* of counsel (*DiCostanzo, Klonsky & Cutrona,* attorneys), for Frank Mezzina and another, respondents.

*Morris Pottish* of counsel (*Irving L. Spanier,* attorney), for Emil Lusardi, respondent.

*Herman Schmertz* of counsel (*Gair, Gair & Conason,* attorneys), for Dorothy M. Campbell, respondent.

STEUER, J. On January 10, 1964, a scaffold used in the construction of a building at 231–235 East 63rd Street fell. There were four men on the scaffold and all four were injured, one of them fatally. Three and the testator of the fourth are the plaintiffs in the action. A peculiar facet of this litigation is that each plaintiff was separately represented, and not only were grounds urged on behalf of one which were not adopted by others, but factual situations were presented which, though all the plaintiffs were victims of a common accident, could result in recovery by one and not the others. However, in the view we take this possibility is eliminated.

All the plaintiffs were employees of Marrano Masons (Marrano), the bricklaying subcontractor on the project. There are two defendants: Regency Joint Venture (Regency), the general contractor, and Patent Scaffolding Co. (Patent), who by contract supplied Marrano with scaffolds, including the one involved in the accident. The case against Regency will be discussed first.

The court submitted to the jury several grounds of possible liability by Regency. All parties recognized the common-law rule that a general contractor is not liable for defects in equipment supplied by a subcontractor to his own employees (*Wright v. Belt Assoc.,* 14 N Y 2d 129; *Iacono v. Frank & Frank Contr. Co.,* 259 N. Y. 377). However, all conceivable exceptions to the rule were urged and submitted as grounds of liability. These included assurance of safety. The court also submitted whether there would be liability under section 240 of the Labor Law, and whether this defendant assumed liability under an agreement with the State Department of Labor. As there was a general verdict, if any of these grounds is untenable the verdict against this defendant cannot stand (*Finkle v. Zimmerman,* 26 A D 2d 179; *Gelderman v. Munson S. S. Line,* 234 App. Div. 889).

We are all in accord that no case for submission was made out on the issues of the Labor Law nor on assurance of safety. A detailed discussion of the evidence on these points would serve no useful purpose and would unduly extend this opinion.

These issues should not have been submitted. As to the remaining ground, this is a case of first impression as far as the particular facts are concerned, and more detailed discussion is in order.

The most favorable view of the evidence is to be found in the testimony of William Washienko, who was the safety engineer assigned to the job by the State Department of Labor. The evidence given by him consisted of his version of a conversation with two of the representatives of Regency and a written report of the conversation made in the regular course of business to his department. It is plaintiffs' contention that the purport of this evidence is that Regency agreed to be responsible for the safety of equipment — and in particular scaffolds — used on the job.

Questions of fact and very far-reaching questions of law are presented by this testimony. As regards fact, the record is not satisfactory as to just what Regency undertook to do. At the urging of defendant's counsel and to avoid possible prejudice, the testimony of the conversation was greatly restricted and, in our opinion, unduly so, with the consequence that defendant's alleged obligation is far from clear. All that is clear is that the State, to promote its program for safety on construction projects, desired the co-operation of the general contractor, perhaps beyond what the latter was in law required to do. But as to specifics, the evidence is vague. There is mention, for instance, that all scaffolds to be used were to be designed by a licensed engineer and that this defendant would see that they were. It is impossible to determine, however, under the truncated version of the conversation, whether anything more than that was intended to be undertaken by Regency.

Even if it be assumed that Regency agreed with the Department of Labor through its inspector to be responsible for the condition of all scaffolding despite its contracts with subcontractors, a serious question of law is presented as to whether such an agreement inures to the benefit of subcontractor's employees who otherwise would have no claim against the general contractor. A further question would be whether a failure to perform as distinct from misfeasance would create any rights. We prefer not to speculate on those questions until the precise factual framework in which they would apply in this case is fixed.

We now come to the case against Patent. By contract with Marrano this defendant agreed to supply and rig 119 scaffolds. The first scaffolds delivered were rigged by Patent on October 25, 1963, and consisted of 59 scaffolds which were rigged on the

15th floor of the building. The rigging projected from that floor on the outside of the building. While the rigging consisted of many parts, those involved in this action consisted of a series of I-beams, the outer one of which projected from the building and supported cables from which the scaffold was suspended. All of these scaffolds were moved from the original installation in the 10 weeks between their delivery to the site and the accident, and had been rigged again at the sites where they were to be used. All of the rigging subsequent to the initial installation was done by Marrano, who for reasons of its own specifically excused Patent from the performance of its contract in this particular. The scaffold that fell was rigged from the 21st floor by Marrano, and the immediate cause of the accident was the fracture of the supporting I-beam.

Two grounds of liability are urged: that the design of the scaffold was faulty, and that the beam that broke was defective when delivered. Before discussing these questions it is obvious that the verdict must be vacated. The court charged the jury that this defendant was liable if the scaffold failed to meet the standards of the Labor Law. This was error. The builder or supplier of a scaffold who does not direct its use is not responsible for its compliance with the Labor Law. This is made precisely clear by the decision in *Sarnoff* v. *Charles Schad, Inc.* (22 N Y 2d 180). There, plaintiff fell from a scaffold which violated the Labor Law in that it lacked guardrails. The general contractor and the builder of the scaffold were sued. The court found that the general contractor was liable as it agreed to supply the subcontractor with a scaffold and, hence, directed his employees to use the scaffold supplied. The court exonerated the builder as it did not come within the purview of the statute (see, also, *Ehrlich* v. *C.B.S. Columbia*, 8 N Y 2d 1113, affg. 9 A D 2d 943, affg. 16 Misc 2d 793).

While this error mandates a new trial, it remains to be considered whether plaintiffs established any common-law liability as to this defendant. It is undisputed that the manufacturer of a product is not responsible to a remote user for defects in the design which are patent or obvious (*Campo* v. *Scofield,* 301 N. Y. 468). However, a somewhat different situation exists where the lack of a protective device might be obvious but the peril so resulting is not (see *Campo* v. *Scofield, supra,* p. 472). " A duty is owed, a liability imposed, *only if* the defect or *danger* be not ' known ' " (italics as to " danger " supplied, *Inman* v. *Binghamton Housing Auth.*, 3 N Y 2d 137, 145). The claimed defect here is the absence of lateral bracing. Surely the danger, if there be any, from such design is not patent. On this

phase of the case proof of the extent of the use of this particular type of scaffold with the precautions the design entails to prevent slipping (which bracing is designed to prevent), and an appropriate charge — which was refused — would be in order.

The defect due to the beam being twisted was obviously patent, as the testimony shows that everyone questioned who had occasion to look at it, except possibly the plaintiffs, noticed it. It should also be noted that the evidence that the beam was twisted when delivered is purely deductive. There is no dispute that the beam served its purpose when installed by this defendant on the lower floor. Also, this defendant had no opportunity to reject the beam before its use on the floor on which it broke, and the patent nature of the defect when it was installed excuses it from liability for supplying it.

The interlocutory judgment entered November 19, 1969, should be reversed, on the law and the facts, and a new trial ordered, with costs and disbursements to abide the event.

CAPOZZOLI, J. P., NUNEZ and MACKEN, JJ., concur.

Interlocutory judgment and order (one paper), Supreme Court, New York County, entered on November 19, 1969, unanimously reversed, on the law and the facts, and vacated, and a new trial directed, with costs and disbursements to abide the event.