UTICA MUTUAL INSURANCE COMPANY, Individually and on Behalf of JOSEPH WEISS, Respondent, *v.* AMSTERDAM COLOR WORKS, INC., Appellant, et al., Defendant.

First Department, June 21, 1954.

*Benjamin H. Siff* of counsel (*John Tullman* with him on the brief; *Frederick Mellor,* attorney), for appellant.

*Jacob D. Fuchsberg* of counsel (*B. Hoffman Miller* with him on the brief; *Jacob D. Fuchsberg,* attorney), for respondent.

*Per Curiam.* On August 29, 1945, one Joseph Weiss was employed by the defendant, Weihs, and was injured when a drum upon which the employee was working with an acetylene torch exploded. The employee elected to take benefits under the Workmen's Compensation Law and the plaintiff brought this action as subrogee. It has recovered a verdict from a jury in the sum of $35,000 against the defendant, Amsterdam Color Works, Inc. (hereinafter referred to as "Amsterdam"), which appeals from the judgment entered thereon. Amsterdam cross-complained against the defendant, Franz Weihs, the employer of the injured employee. The cross complaint was dismissed and Amsterdam's appeal from that decision has been discontinued.

Amsterdam was a manufacturer of paint. In its business it used steel drums, approximately thirty-six inches high and eighteen to twenty-two inches in diameter. Weihs, the employer of Weiss, operated an iron shop and made architectural iron products for use on buildings. The jury could have found that during the period from 1942 or 1943 to the date of the accident in 1945, Weiss, at the request of Amsterdam, on six or eight occasions had cut drums in half by use of an acetylene torch. The two halves of a drum were then used as tubs in Amsterdam's plant.

On the day of the accident Amsterdam sent a drum to Weiss's place of employment. Weiss thereafter "just touched it with the [acetylene] torch, and it exploded". Weiss admitted that he knew it was standard practice in cutting a steel drum to fill it with water or to flush it with steam before applying to the

drum the torch burning at between 5,000 and 6,000 degrees temperature, Fahrenheit. He took neither of these precautions. Neither did the employee unscrew or remove the cap from the hole in the head of the drum or look therein.

The plaintiff's claim of negligence on the part of Amsterdam is to a large extent predicated upon a conversation Weiss claimed to have had with one Offerman, an officer of Amsterdam, before the first drum was cut in 1942 or 1943. It is thus briefly given in his testimony: " So I asked him [Offerman] if the drum is clean, and he says, ' I will assure you, if I bring any drum in here, it will be perfectly clean. Don't worry about it.' And so I went ahead and cut it." Thereupon, Weiss cut the drum and during the ensuing years he claims he cut the other drums relying upon this representation.

Upon the trial certain provisions of the Administrative Code of New York City were received in evidence. It was provided therein that " It shall be unlawful to operate a blow-pipe or other similar device or apparatus for heating, melting or welding, without a certificate of fitness " and further, that " It shall be unlawful to use oxygen in combination with a combustible gas, in or through a blow-pipe or other similar device, for heating, melting or welding, without a permit " (§ C19–93.0, subds. b, c). It was further provided that to obtain a certificate of fitness an applicant must, among other things, " pass an examination, by a person or body designated by the [fire] commissioner * * * upon the risks incident to his employment, and upon his knowledge of the precautions necessary to be taken in connection therewith " (§ C19–14.0).

It was stipulated upon the trial that at the time Weiss used the acetylene torch involved in the accident, he did not have a certificate of fitness and had not complied with any of the stated requirements of the code. He admitted he had never taken any examination given by the fire commissioner. The trial court charged the jury that the failure of Weiss to have the necessary permit or certificate made him guilty of contributory negligence but left it to the jury to determine whether such violations were the proximate cause of the accident. This portion of the charge we view as erroneous (*Corbett* v. *Scott*, 243 N. Y. 66; *Phass* v. *MacClenathen*, 274 App. Div. 535). We treat the incorrect charge as harmless, however, because implicit in the verdict of the jury is a finding upon the law as given to it that there was no causal connection between the violations of the code provisions and the happening of the accident.

We conclude, however, that upon all the evidence the employee must be found guilty of contributory negligence as a matter of law in that he did not use ordinary care in exposing himself to a known danger. The evidence is clear that Weiss did not even remove the screw cap so as to vent the drum and equalize the atmospheric pressure inside the drum with the pressure outside. Furthermore, Weiss testified that he had known for years that it was standard practice to fill a drum with water before applying a torch thereto.

It seems to us that Weiss could not rely exclusively upon the statement of defendant's officer that the drum would be clean. There was evidence that even a clean drum may explode when an acetylene torch is applied thereto under circumstances that were here present. Weiss knew at the time and had known for years that it was standard practice to take certain precautions before applying a torch to any drum. We think that Weiss unreasonably exposed himself to danger and that he knew or had reason to know of such danger. In such event he was guilty of contributory negligence that bars a recovery. Moreover, it is clear that where a person can choose between one of two courses to follow, one of which exposes him to danger and the other of which does not, he may be held guilty of contributory negligence if he chooses the dangerous course. In general, what constitutes knowledge and appreciation of the danger is a question of fact. Obviously, however, where the plaintiff exposes himself to some known danger there can be no question. In such a case he must then use ordinary care to avoid being injured. And he may be held not to have used ordinary care if he exposes himself to a known danger. (1 Warren on N. Y. Law of Negligence, § 9, par. 8, subd. [a]; *Shields* v. *Van Kelton Amusement Corp.*, 228 N. Y. 396; *Griffin* v. *State of New York*, 250 App. Div. 244.)

Thus, in *Fredendall* v. *Abraham & Straus* (279 N. Y. 146) it appeared that plaintiff was made ill from using a dry cleaning fluid under circumstances where she knew or should have known that injury or illness might result. It was held in reversing judgment and dismissing the complaint that the evidence conclusively showed that the plaintiff failed to use reasonable care in the use of the fluid and that this default was an essential cause of her illness.

The judgment should be reversed and the complaint dismissed.

Dore, J. P., Cohn, Callahan, Breitel and Bastow, JJ., concur.

Judgment unanimously reversed, with costs to the appellant and judgment is directed to be entered in favor of the appellant dismissing the complaint herein, with costs.