ULY L. TOWNES, Appellant, *v.* PARK MOTOR SALES, INC., Respondent.

First Department, December 18, 1958.

*Samuel Lawrence Brennglass* of counsel (*Daniel J. Pinsky*, attorney), for appellant.

*William F. McNulty* of counsel (*William S. O'Connor*, attorney), for respondent.

M. M. FRANK, J. In this action, charging common-law negligence, the trial court set aside the verdict in favor of the plaintiff, and dismissed the complaint. The plaintiff appeals from the judgment entered upon that determination.

It is not disputed that the plaintiff, Uly L. Townes, an independent contractor, started his own business of simonizing, polishing and washing cars about four months before the accident, in a five-story building occupied by the defendant, an automobile agency. Prior thereto, the plaintiff had been an automobile mechanic and painter for 20 years. The space assigned to him was located in the basement of the premises and comprised an area approximately 40 by 50 feet, including a washrack 10 by 20 feet. A sink was attached to one wall, and, nearby, a 16-foot hose, used by the plaintiff for washing cars, was connected to a wall faucet. The plaintiff, the only person who regularly worked in the basement, serviced from 50 to 100

automobiles each week, supplying his own material and equipment.

The initial incident that triggered the series of events culminating in the injury suffered by the plaintiff occurred as he stood on a ladder buffing the top of an automobile. In plying that task he was using an electrically driven buffer operating at a speed of 23,000 r.p.m., on which he had placed a new lamb's wool bonnet about seven inches in diameter. While the plaintiff was holding the device for the purpose indicated, the bonnet "burst up into flame." Townes thereupon shut off the motor of the machine, descended the ladder and laid the flaming buffer on the floor. He attempted to stamp out the flames with his feet, but this effort proved futile. He then ran to a corner of the rack and picked up a fire extinguisher which he found to be empty. Hurrying back, Townes once more unsuccessfully trampled on the fire. Finally, he seized a bucket of sand that stood close by and attempted to smother the fire by spreading sand over it, a handful at a time, while repeatedly stamping on it with his feet. It was not until this point in the entire occurrence that Townes was injured, when his coverall caught fire and he was burned on the leg. His hands were burned in beating his ignited garment.

The plaintiff claimed that the defendant was negligent in two respects: first, that it permitted grease, oil and gasoline to collect on the floor; second, that it failed to provide a proper fire extinguisher. We cannot find any causal relation between the failure to supply a workable fire extinguisher and the injury suffered by the plaintiff. Other means were available to Townes for extinguishing the fire. There were two separate sources of water at hand, as well as the bucket of sand. He disregarded the former and ineffectually made use of the latter. From his own testimony it is evident that he placed reliance on the patently dangerous procedure of stamping the fire with his feet, both before and after attempting to resort to the fire extinguisher.

We must assume from the verdict for the plaintiff, that the jury found all the facts in his favor that have reasonable support in the evidence. In setting aside the verdict and dismissing the complaint, the trial court held, in part, that the plaintiff had used a buffer that was not in proper condition and thus had created an emergency.

We cannot agree with that conclusion, for implicit in the verdict was a finding that the jury believed the plaintiff's explanation that the fire had not been caused by a defective

buffer. There was no proof that the machine itself was defective other than the plaintiff's testimony that it emitted sparks.

The plaintiff testified that the floor was caked with an accumulation of grease, gasoline and oil, one quarter of an inch thick. Significant, too, was his statement that on several occasions he spread sand on grease that had dripped from cars. It is clear that whatever the state of the floor with respect to grease, oil and gasoline, the plaintiff was completely and fully aware of the condition for the several months that he occupied the premises. Moreover, he participated in the continuance of that condition by moving cars to and from the area. If his activities added combustible material to the incrusted surface, he was responsible for it. Additionally, it is an obvious and appropriate inference from the evidence that, in his work, some wax and other compound necessarily fell on the floor. Hence, the very condition that the defendant tolerated was one that the plaintiff, too, permitted to exist and in some measure aggravated. Consequently, the same proof upon which the plaintiff relied to establish the defendant's negligence also established his own contributory negligence.

In *Shields* v. *Van Kelton Amusement Corp.* (228 N. Y. 396, 398), the Court of Appeals, in dismissing the complaint after a verdict for the plaintiff, stated: "if it could be held that the defendant was negligent, the same evidence establishes that the plaintiff herself was equally so."

Although written in a different context (*McFarlane* v. *City of Niagara Falls*, 247 N. Y. 340, 347), these quoted words of Chief Judge CARDOZO are quite relevant to the issue here: " The rule to be extracted from these and like cases * * * may now be formulated. At least where the substance of the wrong is negligence, a plaintiff, * * * is under a duty to show care proportioned to the danger. Reasonable care is merely care so proportioned. The danger may be seen or unseen. If seen, there must be effort to avoid it."

If that rule is applied to the facts in this case, it is evident that Townes did nothing to eliminate or avoid the hazard that confronted him daily. While the question of contributory negligence is ordinarily one for the jury, there are cases where the undisputed facts permit but one conclusion. This, in our view, is such a case. If one is conscious of a danger arising from the negligence of another, he is not privileged to ignore it. If he continues to subject himself to it, by his own conduct he bars a recovery for any consequent injury. To express it somewhat differently, it may be said that when a plaintiff exposes himself to a known danger, he must use ordinary care

to avoid being injured, and if safe courses are available, it cannot be held that ordinary care is exercised under such circumstances. (1 Warren, New York Law of Negligence, § 9, par. 8, subd. [a]; *Utica Mut. Ins. Co.* v. *Amsterdam Color Works,* 284 App. Div. 376, 379, affd. 308 N. Y. 816; *Conroy* v. *Saratoga Springs Auth.,* 259 App. Div. 365, 368, affd. 284 N. Y. 723; *Shields* v. *Van Kelton Amusement Corp.,* 228 N. Y. 396, *supra; Griffin* v. *State of New York,* 250 App. Div. 244.)

In an action based upon negligence, absent the doctrine of last clear chance, one may not place himself in a position of danger created by the negligence of another and seek to recover damages when that danger results in harm. (*Storr* v. *New York Cent. R. R. Co.,* 261 N. Y. 348; *Monacelli* v. *State of New York,* 295 N. Y. 332.)

Here, the record is clear that the defendant did not create the emergency. The only negligence attributable to the defendant, that was causally connected to the plaintiff's injury, consisted in its permitting grease, oil and gasoline to accumulate on the floor. There is no dispute that the defendant did not cause the fire and that it did not own or control the machine from which the sparks issued. Upon this state of facts, the doctrine that one placed in a position of danger by another is not to be deemed guilty of contributory negligence for failure to exercise his best judgment in an emergency does not apply. (*La Plante* v. *State of New York,* 200 Misc. 396 [and cases cited], affd. 278 App. Div. 739, affd. 303 N. Y. 648.)

With the floor in the condition he described, Townes knew or should have known that the peril of fire was ever-present. The record is devoid of any proof that he did anything to correct or ameliorate the condition, or to call it to the attention of the defendant. His exposure to any danger attendant upon it was of his own choice.

When the buffer caught fire, there were several courses that the plaintiff might have taken other than the one he pursued. It should be noted that Townes placed the buffer on the floor at a point two flagstones away from the rack which, from the testimony, was free of grease, oil or gasoline. Without risk of injury, he could have placed the buffer in the adjacent sink to contain the flames, or quench them by turning on the faucet. Alongside the rack lay the water hose that he regularly used for washing cars. He could have set the buffer on or near the rack and played the hose on it with perfect safety, inasmuch as the motor was turned off. Instead, despite his full awareness of the hazardous condition of the floor, he chose to put the flaming buffer upon it.

Thus, in the face of multiple choices, the plaintiff elected to follow the one course that exposed him to the danger, when the others did not. Under such circumstances he may be held guilty of contributory negligence as a matter of law. (*Utica Mut. Ins. Co.* v. *Amsterdam Color Works,* 284 App. Div. 376, 379, affd. 308 N. Y. 816, *supra.*)

Accordingly, the judgment should be affirmed on the law, with costs to the respondent.

BOTEIN, P. J. (dissenting). The affirmance by the majority is based on a holding that plaintiff was contributorily negligent as a matter of law in two respects: (1) in permitting the accumulation of caked grease and oil on the floor prior to the fire, and (2) in his negligent conduct after the buffer burst into flames. It is not concluded by the majority, as was held by the trial court, that plaintiff was negligent in using a defective buffer.

The evidence does not compel a finding that plaintiff was responsible for the condition of the floors. He had been on the premises but a few months, and worked only on such cars as the defendant, who conducted a large sales and service operation, directed should be washed and simonized. He had no sublease of any part of the premises, and while space in the basement was made available for his work, he did not exercise dominion or control over the area. Defendant was free to use the basement for car storage as it saw fit and retained full control of the premises. Plaintiff was not responsible for the existence of drippings from cars stored by the defendant. The testimony showed that he made attempts to clean up such drippings as he observed coming from cars on the washrack. The fire, however, took place in the space adjacent to the washrack. Subdivision d of section C19–68.0 of the Administrative Code of the City of New York placed the burden of removing grease and oil from the floors on the defendant.

If, as concluded by the majority, no negligence could be attributed to plaintiff in the origin of the blaze, and if he was not responsible for the condition of the floor which facilitated its spread, his right to recovery must depend upon an appraisal of his conduct in attempting to extinguish the blaze. We cannot agree that a plaintiff must be held guilty of contributory negligence as a matter of law when in the face of multiple choices he chooses the course which exposes him to danger. The case of *Utica Mut. Ins. Co.* v. *Amsterdam Color Works* (284 App. Div. 376, 379, affd. 308 N. Y. 816), relied upon by the majority, is distinguishable. In the *Utica* case there was full knowledge of the dangers presented by a possible course of action, and the deliberate choice of a foolhardy expedient,

despite ample opportunity for reflection and deliberation. Such opportunity was lacking here.

The fact that, faced with a set of alternatives, a party chooses the one which in retrospect is recognized as the one avenue which led to disaster, does not spell out contributory negligence as a matter of law under all circumstances. The standard which the law imposes is not that of acting correctly at one's peril, but of acting reasonably. The reasonableness of a choice is not measured by the calm, cool wisdom of second sight, but by an appraisal of the situation as it must have appeared to a person at the time, confronted with a pressing danger, confusing alternatives and a necessity to act quickly, which would preclude rational and deliberate reasoning. The reason exacted is not "the reason of the morrow" but "reason fitted and proportioned to the time and the event" (*Wagner* v. *International Ry. Co.*, 232 N. Y. 176, 182).

An emergency may cause even a reasonably prudent man momentarily to forget or to disregard dangers of which he was previously aware, or it may justify his taking a risk knowing of such dangers. So long as the emergency which creates the pressures was not created tortiously by the plaintiff in the first instance, his hasty reactions to such an emergency may be found to have been reasonable under the circumstances. Whether an act, ill-advised in retrospect, may have appeared justifiable to a reasonable man under the prevailing circumstances, involves an assessment of judgment which is peculiarly within the province of the jury.

With the buffer ablaze, plaintiff scrambled off the ladder on which he was standing, switched the motor off, set the buffer on the floor, attempted to stamp out the flames, and then reached for the nearest fire extinguisher. With a flaming object in his hands, he acted, according to his testimony, "in a hurry", yelling all the while. The other alternatives, if they presented themselves to plaintiff in the crisis, were not so clearly preferable to the course of action he chose. To reach the sink and the faucet plaintiff would have had to circle the car on which he was working, all the while with the flaming buffer in his hands. To play a water hose on the buffer might have subjected him to electrocution, or might have resulted in a spread of burning oil. Plaintiff had no way of knowing that the fire extinguisher with which he chose to extinguish the blaze was empty. When he discovered that fact he attempted to extinguish the flames with a sand bucket and with his feet. It may not have been wise, but it was understandable. "The law, however, makes allowances for mistakes and for errors of judgment which are

likely to happen upon such an emergency. It does not demand the same coolness and self-possession which are required when there is no occasion for alarm or a loss of self-control'' (*Gardner* v. *State of New York*, 206 Misc. 503, 507, citing *Lowery* v. *Manhattan Ry. Co.*, 99 N. Y. 158, 161; *Wardrop* v. *Santi Moving & Express Co.*, 233 N. Y. 227; *Rague* v. *Staten Is. Coach Co.*, 288 N. Y. 206).

It makes no difference that defendant did not cause the fire to originate and did not own or control the buffing machine. The origin of the blaze was the fault of neither plaintiff nor defendant. If, however, defendant's prior negligent maintenance of the floor of the premises which it controlled facilitated the spread of the fire, and if the acts of the plaintiff in attempting to extinguish the flames were not unreasonable, a jury could properly return a verdict in plaintiff's favor. We believe the judgment for the defendant should be reversed and the verdict reinstated.

BREITEL and McNALLY, JJ., concur with M. M. FRANK, J.; BOTEIN, P. J., dissents in opinion, in which VALENTE, J., concurs.

Judgment affirmed on the law, with costs to the respondent.