**Nancy GASPERINO, as Administratrix of the Estate of Gregory Gasperino, Deceased, Plaintiff,**

v.

**LARSEN FORD, INC., Defendant and Third-Party Plaintiff,**

v.

**FORD MOTOR COMPANY, Third-Party Defendant.**

**No. 65 Civ. 828.**

United States District Court
S. D. New York.

June 5, 1969.

Greenspan & Aurnou, by Joel Aurnou, White Plains, N. Y., for plaintiff.

Schaffner & D'Onofrio, by Purdy, Lamb & Cattagio, New York City, Edmund F. Lamb, New York City, of counsel, for defendant.

Daniel J. Coughlin, New York City, by John McKiernan, New York City, of counsel, for third-party defendant.

## OPINION

EDELSTEIN, District Judge.

This is a wrongful death action commenced by Mrs. Nancy Gasperino as the duly authorized administratrix of the Estate of Gregory Gasperino, deceased, against Larsen Ford, Inc., defendant and third-party plaintiff. Larsen has impleaded Ford Motor Co. Decedent, Gregory Gasperino, was at all relevant times an employee of the third-party defendant, Ford Motor Co. (hereinafter Ford) employed as an assistant district service manager. The court has jurisdiction of the parties and the subject matter of this action by reason of diversity of citizenship and an amount in controversy in excess of $10,000.00 exclusive of interest and costs.

On April 6, 1964, the day decedent met his death, he was working in the basement of the premises of defendant Larsen Ford, Inc. (hereinafter Larsen).

In the spring of 1964 the Ford Motor Co. introduced to the public for the first time a new model Ford known as the Mustang. Between the time of the arrival of these cars in New York from Detroit and the date for their first public showing Ford desired to keep this new model from public view for special promotional reasons. Lacking an indoor area capable of keeping some one hundred of the new cars under wraps, Ford made an arrangement with Larsen, a Ford dealer, to store the new cars in Larsen's basement storage area. Certain "make-ready" work was to be done on the Mustangs prior to the first public showing and Larsen knew of this fact. The task of readying these Mustangs for public viewing fell on decedent Gasperi-

no and five co-workers, all of whom were highly qualified for their tasks. He was notified of his assignment on April 3, 1964, and proceeded to the premises of Larsen that same day to commence work on the Fords. Inasmuch as Ford planned to show the cars on April 14th decedent was forced to work on Friday, April 3rd, from 8:30 a.m. until 2:00 a.m., on Saturday, April 4th, and Sunday April 5th from 8:30 a.m. until 5:30 p.m., as well as on Monday, April 6th, from 8:30 a.m. until he was stricken, at approximately 2:30 in the afternoon.

During the course of the preparation and pre-delivery check-up on the cars it was necessary to start and stop the engines of these vehicles in order to jockey them into position so that the necessary preparations could be done on the cars. Larsen knew, or should have known, of this fact, inasmuch as there were one hundred and thirty automobiles (100 of which were new Mustangs) enclosed in the basement area of some 20,000 square feet.

The basement area of Larsen Ford in which the decedent and his fellow employees were working was provided with no mechanical ventilation, fans, ducts, pipes, hoses, or any other mechanical means of extracting gases, vapors or fumes from the atmosphere in the basement.

Returning specifically to the events that occurred on April 6th, decedent was noticed slouched over in an automobile in the basement at approximately 2:30 p.m. Fellow employees, Fausel and Fritts, assisted him outside into the fresh air and observed that decedent was shaky, sweating excessively, and appeared to be in severe physical discomfort. At about the same time Fausel and Fritts also suffered nausea, dizziness, and weakness. The police were summoned and an officer responded immediately and administered between ten and fifteen minutes of oxygen to the decedent. In addition oxygen was administered to Fausel and Fritts, Gasperino's fellow employees. Decedent appeared revived after this administration

of oxygen but shortly thereafter he complained of pains in his chest and was promptly taken to a nearby local hospital. At the hospital oxygen was again administered to Gasperino for not less than ten minutes. At approximately 3:50 p.m. that day, decedent died. An autopsy was performed the following day. The report of the autopsy stated that the cause of death was an atheromatous occlusion of the coronary arteries due to atherosclerosis. A subsequent toxicological examination of the blood sample disclosed a residue of 13.6 percent of carbon monoxide in the decedent's blood after death.

Plaintiff called Dr. David H. Goldstein, a qualified toxicologist, to give his opinion of the cause of Gasperino's death. Based on an assumption of divers facts in evidence surrounding Gasperino's death, such as the working conditions in Larsen's basement storage area, the work that was being done there, the conditions of ventilation, the illness that beset Gasperino, the administration of oxygen to him, and, thereafter, the autopsy and toxicological report, Dr. Goldstein testified that Gasperino had inhaled enough carbon monoxide gas to cause him to suffer carbon monoxide poisoning, which poisoning in turn precipitated his fatal heart attack.

Although the autopsy disclosed a pre-existing progressive atherosclerotic heart disease it was uncontradicted that the decedent had no prior history of complaints of heart disease, no coronary profile, and was sufficiently well compensated to perform his normal duties without complaint up to the time he was stricken on April 6, 1964.

The Westchester County Coroner, Dr. Bultman, who had performed the Gasperino autopsy was also called to testify as a witness. Dr. Bultman generally shared Dr. Goldstein's opinion. Dr. Bultman's testimony—that the carbon monoxide in decedent's blood contributed in part to decedent's death and was indeed a direct proximate cause of his death—remained unshaken, despite a vigorous attempt on cross examination

to show that this testimony was inconsistent with his autopsy report. The court found the coroner to be an entirely impartial and believable witness. Accordingly, the court places great weight on his testimony.[1]

The record is replete with testimony as to the percentages of carbon monoxide in the blood which would cause symptoms of carbon monoxide poisoning or cause instant death. Likewise, much testimony was introduced to explain the amount of pure oxygen and oxygen plus natural air needed to dilute the percentage of carbon monoxide in decedent's bloodstream to 13.6 percent, the amount found in Gasperino's blood after his death. An analysis of these figures would serve no useful purpose. Since no countervailing medical or scientific testimony was adduced the medical testimony presented to this court that Gasperino died of an atheromatous occlusion of the coronary arteries (a heart attack) which occlusion was proximately triggered by carbon monoxide poisoning, stands uncontradicted.

Plaintiff's first legal argument is that the premises of Larsen Ford were in use as a factory within the meaning of §§ 299 and 316 of the Labor Law of the State of New York,[2] that on April 6th the basement area in which the decedent was working was a workroom in defendant's factory within the meaning of § 299 of that law, that the decedent on that date was a person within the class intended to be protected by §§ 299 and 316 of that law, and that defendant Larsen Ford violated § 299 by failing to provide mechanical ventilation as required therein. His second legal argument is that Larsen violated § 200 of the Labor Law by failing to provide decedent with a safe place to work. Larsen denies the applicability of these statutes to the facts of the case in hand, and in any event, cross claims against Ford Motor Co.

Section 299 of the Labor Law of New York requires that each workroom in a factory be provided with proper and sufficient means of ventilation, natural or mechanical, as may be necessary. There is a provision that if dust, gases, fumes, vapors, fibers, or other impurities are generated or released in the course of the business carried on in any workroom of a factory in quantities tending to injure the health of the employees, then suction devices must be provided which will remove the impurities from the workroom by means of proper hoods connected to conduits and exhaust fans.

"Factory" is defined by § 2(9) of the Labor Law to include a workshop

1. A letter of one Joseph Dean Edwards addressed to a Gerard S. Foley of Ford, and a report entitled "Workmen's Compensation Investigation Report" were received in evidence subject to a motion to strike. Since both of these documents are at best cumulative the court found no need to consider them.

2. N. Y. Labor Law § 299 (McKinney's Consol. Laws, c. 31, 1965) reads in part as follows:
   "1. Every work room in a factory shall be provided with proper and sufficient means of ventilation, natural or mechanical or both, as may be necessary * * *.
   "2. All machinery creating dust or impurities in quantities tending to injure the health of employees shall be equipped with proper hoods and pipes connected to an exhaust fan of sufficient capacity and power to remove such dusts or impurities; such fan shall be kept running constantly while such machinery is in use. * * *

   "3. If dust, gases, fumes, vapors, fibers or other impurities are generated or released in the course of the business carried on in any workroom of a factory, in quantities tending to injure the health of the employees, suction devices shall be provided which shall remove such impurities from the workroom, at their point of origin where practicable, by means of proper hoods connected to conduits and exhaust fans. Such fans shall be kept running constantly while the impurities are being generated or released. * * *"
   N.Y.Labor Law § 316 (McKinney 1965) reads in part as follows:
   "1. Except as in this article otherwise provided, the person operating a factory, whether as owner or lessee of the whole or a part of the building in which the same is situated or otherwise, shall be responsible for the observance of the provisions of this article, anything in any lease or agreement to the contrary notwithstanding."

or other manufacturing establishment where one or more persons are employed in manufacturing including making, altering, repairing, finishing * * * any article or thing in whole or in part and includes all buildings, sheds, structures, or other places used for or in connection therewith. Section 2(7) of that law defines "employed" to include "permitted or suffered to work." Thus by statutory definition the court concludes that Gasperino was employed in Larsen's basement since it is clear that he was "permitted or suffered" to work there at the time of his accident. Likewise, by statutory definition, the court concludes that Larsen's garage was a factory and that the basement premises of that garage was a workshop therein at that time.

It is conceded by defendants that there were no mechanical exhaust or ventilation systems in the basement. It is also conceded that Larsen, as lessee of the premises stood in the shoes of an owner of those premises. Indeed, Larsen actively operated and controlled those premises in the conduct of his business.

Larsen had actual knowledge that the Mustangs were being prepared for public exhibition. It knew, or should have known, based on its experience, that they were being jockeyed back and forth under their own power. Altogether it was aware of the operation which was being performed on its premises with its consent and for a consideration. The basement area in which Gasperino was working was an integrated part of Larsen's total physical plant. This total business facility was used in its entirety in the manifold operations incidental to Larsen's business. The court finds that Larsen was a person operating a factory within the meaning of § 316(1).

Defendant urges, however, that plaintiff may not predicate liability on defendant based on § 299 because that section is limited exclusively to the protection of employees and that it imposes obligations only upon the employers of these employees. Thus, in the instant case, defendant argues that only if Gasperino had been an employee of Larsen Ford in the accepted employer-employee relationship would Larsen Ford have had duties and obligations running to him under § 299.[3] But the protection afforded by § 299 is not so narrowly limited.

Defendant places much reliance on the 1940 case of Savage v. Mathieson Alkali Works, 174 Misc. 1022, 22 N.Y.S.2d 692 (Sup.Ct. Niagara County 1940), aff'd without opinion 261 App.Div. 1053, 27 N.Y.S.2d 454 (4th Dept.1941). In that § 299 case plaintiff, Savage, was an employee of DuPont; DuPont was in no way involved in the suit. Savage was injured at a place removed from defendant's premises. Indeed, the plaintiff never even entered defendant's factory. In dismissing his § 299 claim the court said, *inter alia,* "The plaintiff does not allege that he was an employee of the defendant; he alleges that he was an employee of E. I. DuPont De Nemours Company, Inc. in an industrial plant located in close proximity to the premises of the defendant. The plaintiff charges the defendant with violation of statutes prescribing conditions to be maintained within the interior of the defendant's factory. Labor Law, §§ 290, 299, subd. 1. In so far as such statutes relate to the atmospheric and other working conditions in the defendant's factory, they are for the protection of the employees of the defendant and a violation of them creates under certain circumstances, a cause of action in favor of employees of the defendant and no others. Schmidt v. Merchants Despatch Transportation Company, 270 N.Y. 287, 200 N.E. 824, 104 A.L.R. 450." At 695. The lack of

---

3. It is conceded that Gasperino was not an employee of Larsen Ford as that term is usually employed, that he received no salary or remuneration from Larsen, and that Larsen had no control of Gasperino or say in the manner in which Gasperino was to discharge his duties.

nexus between plaintiff and defendant in *Savage* distinguishes it from the instant case so as to make *Savage* not particularly helpful.

■■ More apposite than *Savage* is McCullough v. National Dairy Products Corp., 12 Misc.2d 778, 177 N.Y.S.2d 435 (Sup.Ct.Erie Co.1958). There, plaintiff, an employee of Lincoln Carting Company, not a party to this action, drove Lincoln's truck to defendant's plant to make a delivery under a contract of delivery between Lincoln and defendant. At defendant's plant the plaintiff proceeded to unload the syrup by use of an auxiliary gasoline motor and pump supplied and owned by plaintiff's employer. Plaintiff, as a result, died of carbon monoxide poisoning. His administratrix brought suit under §§ 200 and 299. Although the court dismissed the complaint, it was careful to point out that the cause of death was a defect in the contractor's (the plaintiff's employer) motor and pump. There was no defect in the plant of the defendant.

> "The contractor, Lincoln Carting Company, was bound by contract to furnish all instrumentalities by which the sweetose was to be transported and delivered; *there was no defect in the 'garage and loading room'*; it was not unsafe *qua* garage; the work contracted for was not necessarily dangerous; *the danger arose from the method by which the sweetose was unloaded* into defendant's storage tank; *the defect was in the contractor's outfit*, consisting of 'an auxiliary gasoline motor and pump,' and *not in the plant of the defendant*. Therefore the second cause of action in the complaint fails to state a cause of action." At 437. (Emphasis added.)

The crucial difference between *McCullough* and the instant case is that the plant, *i.e.*, the basement premises of Larsen, was defective. It is not a question of whether Gasperino's equipment was defective, but that the facilities in which he worked were unsuited for the purposes for which they were used. As the Court of Appeals said in Hess v. Bernheimer & Schwartz, Pilsener B. Co., 219 N.Y. 415, 114 N.E. 808 (N.Y.1916), " 'A plant is defective when any part of it is not in a proper condition for the purpose for which it was intended.' " at 418, 114 N.E. at 808. Finally, it can be seen upon reflection that § 299 was designed to protect workingmen who work in factories; Gasperino was such a workman. There can be no question, then, that Gasperino was a member of the class for whose protection § 299 was enacted. Osborne v. Salvation Army, 107 F.2d 929 (2d Cir.1939).

■ A violation of § 299 eliminates the plaintiff's need to show that the defendant was negligent. As the Court of Appeals said in *Schmidt*, "The Legislature has cast upon the defendant a duty not measured by the usual norm of what a reasonably prudent man would do under the same circumstances. The duty is imposed for the special benefit and protection of employees * * *. The statute does not merely define the degree of care required in that occupation. It imposes an absolute duty upon employers to provide adequate and proper safeguards * * * liability for disregard of the statutory duty regardless of negligence is implied * * *." At 303–306, 200 N.E. at 829. *Accord*, Michalek v. U. S. Gypsum Co., 16 F.Supp. 708 (W.D.N.Y.1936) "a violation of the duties imposed constitutes negligence as a matter of law. * * * The statute being for the benefit of a particular class, where one of that class is injured because of its violation, recovery may be had irrespective of negligence on the part of the defendant." At 709; Kolenko v. Certainteed Prod. Corp., 20 F.Supp. 920 (W.D.N.Y.1937) "Violation of a statute imposing a duty to furnish safeguards for the benefit of employees is conclusive as to the negligence of the person charged with the violation." At 921.

■ Another problem in a § 299 case is whether or not the defense of contributory negligence is a bar to the action.

It would appear not, although there is some authority for the proposition that contributory negligence might or may be a bar to a § 299 action, see *Kolenko & Michalek, supra*. Since the statute is designed to impose an absolute duty for the protection of a class of persons against definable hazards which they themselves are incapable of avoiding, see *Schmidt, supra; cf. Osborne, supra;* Koenig v. Patrick Construction Corp., 298 N.Y. 313, 83 N.E.2d 133 (1948),[4] it would seem contrary to the purpose of § 299 to permit contributory negligence to serve as a defense to this kind of action.

Judge Fuld, writing for a unanimous court in *Koenig*, although discussing a provision of the labor law different from the one involved here, laid down general principles particularly well applicable to a discussion of § 299:

> "Irrespective of how the courts may once have viewed the question * * * it is our judgment that both sound reason and persuasive decisions, involving statutes whose content and purpose are similar to those of section 240, require the conclusion that that statute does not permit the worker's contributory negligence to be asserted as a defense." (citations omitted) *Koenig* at 317, 831 N.E.2d at 134.

■ The court is convinced that a § 299 violator cannot assert the defense of contributory negligence. Sec. 299 aside, however, defendant's claim of contributory negligence against Gasperino still cannot prevail. In a New York State death action the burden is upon the defendant to prove any contributory negligence by a fair preponderance of the credible evidence.[5] The defendant has failed to carry its burden. Given the facts here, the court cannot say that Gasperino failed to use due care and ordinary prudence in avoiding injury to himself, nor that he failed to make reasonable use of his faculties to discern and avoid any dangers in the performance of his job. Gasperino was on Larsen's premises with its consent and permission. The basement location was not affirmatively selected by Gasperino, nor did Gasperino have any personal choice or say in the arrangements between Ford and Larsen. In fact, the basement location was designated and made available to Ford by Larsen. This location consisted of approximately 20,000 square feet, approximately one-half an acre. There was an 8 x 9 foot overhead door leading outside at the basement level, and an 18 foot wide ramp leading up to the main floor and outside through a 10 x 12 foot overhead door. In addition along the north side of the basement there were a series of 14 manually operated casement windows having dimensions of 6 x 6 feet; along the south wall there were more windows. Some of these windows had broken panes of glass and some of the other windows were covered with plastic sheets. Altogether the premises presented an illusion of a safe place in which to work, when, in fact, it was not safe at all. Its appearance was so deceiving as to be able to mask successfully a very dangerous condition.

The garage's deceptively dangerous condition could hardly have been realized in the exercise of ordinary prudence and discretion. It is indeed doubtful that the danger of carbon monoxide poisoning became apparent until Gasperino and two of his co-workers were stricken, and perhaps not even then. In sum, what the record reveals to this court is that Gasperino asserted that degree of care which others of his type and position would ordinarily exercise under comparable conditions and circumstances.

---

4. Cf. Federal Employers Liability Act, 45 U.S.C. § 53, *"Contributory negligence; diminution of damages,* * * * [N]o such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

5. 17B McKinney's EPTL § 5-4.2.

Cases—relied on by defendant—such as Townes v. Park Motor Sales, 7 A.D. 2d 109, 180 N.Y.S.2d 553 (1st Dept. 1958) aff'd. 7 N.Y.2d 767, 194 N.Y.S.2d 37, 163 N.E.2d 142 (1959) are hopelessly inapplicable to the facts in this case. Critical to the court's finding in *Townes* was that the plaintiff was conscious of a danger arising from the negligence of another. It is beyond doubt in the instant case that Gasperino was not conscious of the danger arising from Larsen's violation of § 299.

For the court to find that Gasperino was contributorily negligent under all the circumstances of this case would require a rejection of all the credible evidence which preponderates in Gasperino's favor.

### Section 200

Sec. 200 of the Labor Law mandates that "all places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places."

■ This court concluded, *supra*, that the basement of the Larsen garage was a workroom in a factory as that term is used in the Labor Law, and that Larsen stood in the position of an owner. It is clear that under § 200 "the owner-occupant of a building has the affirmative obligation of providing a place safe for the work of the employees of an independent contractor properly on the premises." Gasper v. Ford Motor Co., 11 A.D.2d 902, 203 N.Y.S.2d 382 (4th Dept.1960). *Accord*, Seigel v. Prima Concrete Construction Corp., 27 A.D.2d 946, 279 N.Y.S.2d 95 (1967).

■ Although it is clear that the courts of New York have constantly construed § 200 as a codification of the Common Law in regard to the obligations of an employer to provide employees and other persons lawfully frequenting the premises with a safe place to work,[6] it is equally clear that decedent Gasperino was lawfully frequenting Larsen's premises and was not a trespasser therein. In addition, Carl Larsen himself admitted that he did not allow his own employees to use the basement portion of his premises for mechanical or make-ready operations on automobiles. In addition, it is undisputed that prior to the 6th of April 1964 Larsen had suffered or permitted some windows to be covered with a plastic material in these premises further decreasing natural ventilation, and, concededly, there were no mechanical ventilation facilities in the basement. It is clear on the basis of all the credible evidence that Larsen knew that in the course of the operations on these automobiles that the automobiles would be moved on their own power and that the engines would be running. Yet Larsen at no time warned the decedent or his colleagues of the danger that could develop in the basement even though it never would allow its own employees to perform similar work in this area. This court finds, therefore, that on all of the evidence that defendant Larsen did not comply with § 200 [7] of the Labor Law re-insofar as it did not provide a reasonably safe place for persons lawfully frequenting his premises.

### The Cross-Claim

Defendant, Larsen Ford, cross-claims against the Ford Motor Company in the

---

6. See Zinsenheim v. Congregation Beth David Inc., 10 A.D.2d 501, 200 N.Y.S.2d 753 (1960); Bein v. City of New York, 271 F.Supp. 542 (S.D.N.Y.1967).

7. That the defense of contributory negligence is available in a § 200 violation is not important in this matter because the

court has found that Gasperino was not contributorily negligent. Insofar as § 200 allows a defense of contributory negligence and § 299 does not, it is explicable in that § 200 represents a codification of the common law whereas § 299 expands the common law. See *Bein*, supra.

event that it (Larsen Ford) is found liable to Gasperino. This court, having found Larsen liable to Gasperino must now consider the cross-claim. The essence of Larsen's argument is that the Ford Motor Company was the active tortfeasor in this case and that accordingly Larsen should be able to obtain indemnity because it was at most merely a passive tortfeasor.

To give credence to Larsen's cross-claim this court would have to ignore its crucial findings that Larsen violated §§ 200 and 299 of the Labor Law of New York insofar as it failed to provide the plaintiff with a safe place to work, failed to provide the required and appropriate ventilation facilities, and that Gasperino was in no way negligent. The court therefore finds that Larsen was the active tortfeasor if those words have any meaning at all.

■■■ The recent case of Burns v. Cunard S. S. Co., 404 F.2d 60 (2d Cir. 1968) is analogous to the instant case. There the plaintiff, employee of John T. Clark & Son, was injured when the wheel of a car he was towing went into a hole in the pavement of a work area of Cunard. The Clark firm had been employed by Cunard to remove cargo from one of the latter's vessels. The court in holding that Cunard did not have a claim over against Clark said: "Under N.Y. Labor Law § 200, Cunard had a duty to inspect the area and to repair the hole, since a reasonable inspection would have disclosed its existence. Cunard's failure to do so was active negligence and thus it cannot obtain indemnity from Clark." (at 61.) In the instant case Larsen failed to supply the needed ventilation facilities and a safe place to work, even though it knew, or should have known, that automobile engines would be running. The fact that the violation in issue is a result of an act of omission rather than an act of commission is utterly immaterial. Bush Terminal Bldgs. Co. v. Luckenbach S. S. Co., 9 N.Y.2d 426, 214 N.Y.S.2d 428, 174 N.E. 2d 516 (1961).

Wholly different are the many cases in which the accident occurred not because of a defect in defendant's plant but because the plaintiff used unsafe materials not under the control or supervision of the defendant. Gasper v. Ford Motor Co., 13 N.Y.2d 104, 242 N.Y.S.2d 205, 192 N.E.2d 163 (1963); Wallach v. United States, 291 F.2d 69, cert. denied 368 U.S. 935, 82 S.Ct. 373, 7 L.Ed.2d 197; McFall v. Compagnie Maritime Belge (Ibyd Royal S.A.), 304 N.Y. 314, 107 N.E.2d 463 (1952).

Defendant's reliance on Jackson v. Associated Dry Goods Corp., 13 N.Y.2d 112, 242 N.Y.S.2d 210, 192 N.E.2d 167 (1963), is misplaced. There the plaintiff was injured when she fell over loose gravel in defendant's parking lot. The defendant cross-claimed against the Posillico Construction, Inc. The Court of Appeals held that the cross-claim would lie because the defendant could not be guilty of active negligence solely because it had constructive notice of the rocks in the driveway. Posillico, however, was unquestionably and undeniably negligent in that case because the rocks were left over from construction work done by Posillico for Nassau County.

In the case at bar, however, Larsen has failed to impute any negligence to Ford via the acts of Ford's employees.

■■■ Defendant Larsen's attempt to show that it had not violated a "non-delegable duty statute" like § 241 of the Labor Law, is irrelevant. Defendant cites Semanchuck v. Fifth Avenue and 37th Street Corp., 290 N.Y. 412, 49 N.E.2d 507, (1943) and Wischnie v. Dorsch, 296 N.Y. 257, 72 N.E.2d 700 (1947). Analogized to the facts of the instant case the most that these cases could stand for is the proposition that if Ford were negligent Larsen in the appropriate factual setting could obtain indemnity from Ford. Ford, however, was not negligent. Accordingly, *Semanchuck* and *Wischnie* do not help the defendant.

The cross-claim over must fail. Defendant Larsen must bear the consequences of its violation of §§ 200 and 299 alone.

*Damages*

The provable damages supported by a preponderance of the evidence are as follows:

| | |
|---|---:|
| Estimated pecuniary benefits from earnings already lost to date of judgment.[8] | $51,100.00 |
| Estimated present value of future lost benefits from decedent's earnings (discounted at 5 percent). | 139,000.00 |
| Estimated value of personal services and attention which decedent would have given to and which would have been of material value to his family. | 24,000.00 |
| Funeral expenses. | 1,799.00 |

———◆———

At the time of his death, Gasperino, then at age 46, had a life expectancy of 26.3 years and a work expectancy of 18.8 years. For each of the five years directly preceding his death Gasperino had earned an average of approximately $10,000.00, and, based upon his excellent past record, Gasperino could look forward to earning in the future increased amounts resulting from merit and promotional increases. The evidence adduced at the trial also indicates that Gasperino contributed the whole of his salary to his family except for $15.00 each week which he required for personal use. Accordingly, this court finds that from the time of his death until the date of this judgment, Gasperino would have earned $55,000.00 and would have contributed $51,100.00 of that amount to his family. Based upon a consideration of Gasperino's life expectancy, his work qualifications, his income and prospects and his practice in respect to supporting his family, the court finds that during the course of the remainder of his work expectancy (approximately fourteen years), Gasperino would have earned $212,708.00, and would have contributed $202,000.00 of that amount to his family. The present value of $202,000.00 discounted at an interest rate of 5 percent comes to $139,000.00. Thus, this court finds that plaintiff is entitled to a total of $190,100.00 for the amount of contribution Gasperino would have made to his family had he been permitted to enjoy the years of life to which he normally could have looked forward.

In addition to the value of the lost contributions, the plaintiff is entitled to recover on behalf of the children for the loss of parental care and guidance, provided that there be evidence of the fitness of the parent and that the children have been deprived of the advantages of a good parental relationship and strong father image. The record is abundantly clear that Gasperino was a good father; he was diligent and attentive to the needs of his children. He spent much time with them and personally trained his sons in the skills of his trade. Had Gasperino been able to enjoy the full span of his life he would have been able in his role as a father to continue to guide and assist in the moral and educational upbringing of his children. While it is difficult to fix a precise mathematical decimal point value for the deprivation of this parental care and guidance, nevertheless the deprivation of intellectual, moral, and physical training suffered by the children is such as to admit of an evaluation based on an estimate of the reasonable value of the loss involved.

8. The discount is not applied to periods antedating judgment. Montellier v. United States, 202 F.Supp. 384, 424 (E.D. N.Y.) aff'd 315 F.2d 180 (2d Cir. 1963.)

The court finds, in view of the close relationship that existed between Gasperino and his three children, that Judith Gasperino (aged 19 at the time of father's death) is entitled to $2000.00; that Gregory Gasperino (aged 17 at the time of father's death) is entitled to $4000.00; and that Anthony Gasperino (aged nearly 12 at the time of father's death) is entitled to $18,000.00. In sum, the court finds that $24,000.00 is a reasonable award for the deprivation suffered by decedent's children.

Finally the plaintiff is entitled to funeral expenses incurred on Gasperino's behalf in the amount of $1799.00.

Thus, the court finds that the total amount of the damages sustained by the beneficiaries of Gregory Gasperino to be $215,899.00 plus interest of $64,770.00. Judgment in the amount of $280,669.00 is to be entered solely against Larsen Ford, Inc. Accordingly, the claim over against Ford Motor Company fails in all respects.

The foregoing constitutes the findings of fact and conclusions of law of the court under Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.

So ordered.