Walter HUMPHRIES, Plaintiff,

v.

**CONSOLIDATED EDISON COMPANY OF NEW YORK, Inc., Defendant and Third-Party Plaintiff,**

v.

**J. LIVINGSTON & COMPANY and Eberhart Construction Company, Inc., Third-Party Defendants.**

No. 66 Civ. 206.

United States District Court, S. D. New York.

Aug. 13, 1969.

Raphael, Searles & Vischi, New York City, for plaintiff; Oswald Vischi, Edmund D'Elia, Mark A. Lowe, New York City, of counsel.

John M. Keegan, New York City, for Consolidated Edison Co. of New York, Inc.; Ernest J. Williams, New York City, of counsel.

J. Robert Morris, New York City, for J. Livingston & Co.; Herman McCarthy, New York City, of counsel.

Hanlon & Dawe, New York City, by Alexander, Ash & Schwartz, New York City, for Eberhart Construction Co., Inc.; Joseph A. Cohen, Arnold I. Silberstein, New York City, of counsel.

## OPINION

BONSAL, District Judge.

This diversity personal injury action was tried by the court without a jury. Plaintiff Walter Humphries, an employee of third-party defendant J. Livingston & Company (Livingston), an electrical contractor, sued defendant Consolidated Edison Company of New York, Inc. (Con Ed) for damages for personal injuries allegedly sustained on April 9, 1965 at Con Ed's plant at East 40th Street and First Avenue, New York City, when he came into contact with an uninsulated electrical outlet on a fluorescent light fixture and received a shock which caused him to fall off the ladder on which he was working, seriously injuring his left foot. Con Ed sued Livingston for indemnity for any judgment that plaintiff may obtain against it. (Con Ed also sued Eberhart Construction Company, Inc. for indemnity but

this action was discontinued by stipulation during the trial.)

Plaintiff testified that he had been an electrician for some 20 years and had been working for Livingston at the Con Ed plant since October, 1964. On April 9, 1965, the day of the accident, plaintiff was assigned to work under his "straw boss," Weiner, in a part of the plant known as "West Gallery, Third Floor, Section 7," to splice the bus ducts and bus bars being installed in the ceiling, which required the use of a stepladder. Difficulty was being experienced in the splicing operation, and prior to the accident both plaintiff and Weiner used the stepladder to inspect the bus ducts to determine the cause of the difficulty. Plaintiff then went up on the stepladder to align the holes in the bus duct so that they could be fitted with bolts, when his left arm came into contact with a live broken electrical outlet consisting of two prongs on a fluorescent light fixture, and the shock caused him to fall off the ladder, resulting in the injuries here complained of. Immediately after the accident, Herd, a Con Ed employee, tested the broken outlet and ascertained that it was live. Plaintiff testified that he had observed the prongs prior to the accident but did not test them because his job did not involve working on the light fixture and he assumed that Con Ed had taken proper safety precautions.

Herd, the electrical inspector for Con Ed, acknowledged that he observed the unprotected prongs the day before the accident, and testified that he took protective measures by taping the switch controlling the light fixture and placing a sign on the switch that it should not be turned on. Herd also testified that he had discussed the matter with Weiner and Duffy, Livingston's general foreman, both of whom denied that any such conversation took place.

From Herd's testimony, it is clear that Con Ed was on notice of the dangerous condition which caused plaintiff's injury. Moreover, even if his testimony

with regard to the protective measures taken is to be believed, Herd failed to take proper measures to deactivate the prongs, which, as an electrician, he should have known could have been done by taping the prongs or deactivating the outlet at the control box. Furthermore, if Herd did tape the switch and place the sign, this protection could only have been removed by Con Ed employees or by such of Livingston's employees who were permitted access to the room by Con Ed. There is no evidence that the protection was removed. Moreover, Weiner and Duffy denied that they saw such a sign.

The evidence at the trial conclusively demonstrates that Con Ed was in control of the work area, that it had notice of the dangerous condition caused by the broken outlet, and that it failed to take proper measures for the protection of plaintiff and his fellow employees. The court accepts plaintiff's testimony that the electric shock caused him to fall off the ladder injuring his foot, so that Con Ed's negligence was the proximate cause of his accident.

*Contributory Negligence*

█ Plaintiff had the burden of showing that he was free of contributory negligence. Con Ed contends that he was contributorily negligent as a matter of law since he was an experienced electrician, had observed the prongs, and failed to test them, relying on Seidman v. M & R Air Conditioning Corp., 15 N.Y.2d 814, 257 N.Y.S.2d 935, 205 N.E. 2d 859 (1965), Nucci v. Warshaw Construction Corp., 12 N.Y.2d 16, 234 N.Y.S. 2d 196, 186 N.E.2d 401 (1962), McAllister v. New York City Housing Authority, 9 N.Y.2d 568, 216 N.Y.S.2d 77, 175 N.E. 2d 449 (1961), Avery v. Order of St. Basil the Great, 27 A.D.2d 481, 280 N.Y. S.2d 171 (3d Dept. 1967), Townes v. Park Motor Sales, Inc., 7 A.D.2d 109, 180 N.Y.S.2d 553 (1st Dept. 1958), aff'd. 7 N.Y.2d 767, 194 N.Y.S.2d 37, 163 N.E. 2d 142 (1959), and Utica Mutual Insurance Co. v. Amsterdam Color Works, 284 App.Div. 376, 131 N.Y.S.2d 782 (1st

Dept. 1954), aff'd. 308 N.Y. 816, 125 N.E.2d 871 (1955).

On the other hand, plaintiff contends that the evidence shows that he was free from contributory negligence, for the reason that the broken outlet was not related to the work he was doing on the bus ducts, and that he was entitled to assume that Con Ed had provided him with a safe place to work.

■ Unless plaintiff was contributorily negligent as a matter of law, the issue is one to be determined by the trier of fact. Person v. Cauldwell-Wingate Co., 187 F.2d 832 (2d Cir. 1951), cert. denied, 341 U.S. 936, 71 S.Ct. 855, 95 L.Ed. 1364 (1951); Perrone v. Pennsylvania R. Co., 136 F.2d 941 (2d Cir. 1943).

The cases cited by Con Ed do not establish that plaintiff was contributorily negligent as a matter of law. They involve situations where the plaintiff was aware of a potential hazard in connection with the work which he was doing, despite which he took no steps to determine whether the hazard existed. Moreover, in none of the cases except *McAllister* was the defendant in control of the premises where the accident occurred. Person v. Cauldwell-Wingate Co., *supra,* and Perrone v. Pennsylvania R. Co., *supra,* involved fact situations more closely resembling the present case than the cases cited by defendant, and in both it was held that the issue of contributory negligence was for the trier of fact.

■ The uninsulated outlet which shocked plaintiff had nothing to do with his work, and his contact with it was accidental. The court finds that under the circumstances it was not unreasonable for plaintiff to assume that Con Ed, being in control of the premises, would have provided him with a safe place to work. Plaintiff has proved by a pre-ponderance of the evidence that he was not contributorily negligent.*

*Damages*

Dr. Ernest Stich, an orthopedic surgeon, testified that he was plaintiff's treating surgeon, beginning the day following plaintiff's accident. He testified that plaintiff suffered a comminuted fracture of the os calcis, in other words a shattered heel bone, which was caused by his fall, and that his injury, involving loss of motion of his foot, deformity of his foot, discomfort, and pain, was permanent. He testified to various operations he had performed on plaintiff and said that plaintiff may have recurrences of calcium growth, necessitating further operations, and that plaintiff's injuries make him more susceptible to arthritic changes.

The testimony establishes that Humphries is suffering from a permanent injury which causes pain and suffering, particularly during changes of the weather or when he uses his foot too much. Moreover, he walks with a slight limp and must have foam rubber padding in his shoe.

Plaintiff's wife testified that whereas before the accident plaintiff had been a cheerful and outgoing person, after the accident he became "grouchy." Both plaintiff and his wife testified that the accident has interfered with his outside activities, particularly with his hobby of working in the pit crew at auto races, and that he is now unable to dance, which they had both enjoyed before the accident.

From the evidence, the court finds that the plaintiff is entitled to the following special damages:

| | |
|---|---|
| Loss of earnings from the date of his accident to the date of trial | $14,000.00 |
| Medical and hospital expenses | $ 3,142.35 |

---

* Plaintiff's use of the stepladder when leaned against the wall in a closed position, rather than opened, was not contributory negligence; its use in that fashion was no more hazardous than when open. Moreover, the evidence establishes that plaintiff's fall was caused solely by the electrical shock.

There was no evidence as to future lost earnings, other than that in the past plaintiff had taken occasional days off because of his foot, and Dr. Stich's testimony that plaintiff's condition might deteriorate. Frank Cunningham, a foreman at the Broadway Maintenance Company, plaintiff's current employer, testified that plaintiff is now earning $5.55 an hour, plus 10% vacation pay, which is the same pay being earned by others in his group even though he is assigned to less strenuous work. There was no showing that plaintiff's present earnings would have been greater if he had not sustained the accident. Accordingly, plaintiff is not entitled to an award for future lost earnings.

■ The evidence shows that the plaintiff has endured pain and suffering by reason of the accident, and is reasonably certain to endure pain and suffering in the future. He has a permanent injury, walks with a slight limp, and continues to suffer pain, particularly during changes of weather or when he uses his foot too much. Plaintiff has a life expectancy of some 31 years. The court finds that a fair value for plaintiff's pain and suffering is $70,000.00.

Therefore the court finds that plaintiff is entitled to judgment against Con Ed in the amount of $87,142.35 (Loss of earnings, $14,000.00; Medical and hospital expenses, $3,142.35; Pain and suffering, $70,000.00).

*The Third-Party Action*

Con Ed seeks indemnity from Livingston, both at common law and by virtue of the contract between the parties dated November 27, 1963.

■ Con Ed has no right to indemnification by Livingston under common law principles, since it was actively negligent. Bush Terminal Buildings Co. v. Luckenbach S.S. Co., 9 N.Y.2d 426, 214 N.Y.S.2d 428, 174 N.E.2d 516 (1961).

If Con Ed is to be indemnified by Livingston, it must be by virtue of their contract of November 27, 1963, by which Livingston agreed to perform electrical contracting services for Con Ed for a lump sum price of $1,033,762.00. The indemnity clause of the contract, which is paragraph 26 of the "Articles of the General Conditions," provides that:

"INDEMNIFICATION

The Contractor shall indemnify and save harmless the Company from and against any and all liability arising from injury to person or property occasioned wholly or in part by any act or omission of the Contractor, his agents, servants or employees, including any and all expense, legal or otherwise, incurred by the Company in the defense of any claim or suit, arising out of work done under a Lump Sum Contract."

Con Ed contends that the employees of Livingston who testified were negligent in failing to observe and correct the condition which caused the accident, and therefore were guilty of an "omission" entitling Con Ed to indemnification under paragraph 26 of the "Articles of the General Conditions."

Livingston, on the other hand, denies that there was any evidence of negligence or failure to use the care required under the contract on the part of Livingston personnel.

■ Con Ed has not shown that Duffy's and Weiner's failure to observe the uninsulated prongs so that they might correct the condition is an "omission" in terms of paragraph 26 of the "Articles of the General Conditions." (It clearly was not an "act.") In the absence of a duty to observe, their failure to observe the exposed prongs was not negligence.

■ Con Ed argues that paragraph 4 of the "Articles of the General conditions" imposed upon Livingston a duty to observe and correct the condition. That paragraph provides:

"SAFEGUARDS IN CONSTRUCTION

In the case of a Lump Sum Contract, the Contractor expressly undertakes and agrees to provide and maintain at his own cost and expense adequate, safe and sufficient walkways, plat-

forms, barricades, warning lights, scaffolds, ladders, runways for concrete carriers, hoists and all necessary and proper equipment, apparatus and appliances useful in carrying on the work and to make the place of work and the ways and approaches thereto safe and free from avoidable danger or as may be required by public authority or local conditions, and the Contractor shall not load any part of the structure with a weight that will endanger its safety. The Contractor shall be responsible for any failure or neglect on his part to perform this covenant."

The duty imposed by that paragraph is to "provide and maintain" the equipment listed for the purposes of facilitating the work and of making "the place of work and ways and approaches thereto safe and free from avoidable danger." The last clause does not, as Con Ed contends, impose a general overall duty to make the work area free of danger, but only imposes that duty insofar as it can be fulfilled by providing and maintaining the equipment listed.

Livingston did not provide the fluorescent light fixture, which was evidently there when it began work; the reasonable construction of "provide and maintain" is that Livingston had the duty to maintain only the equipment it provided—since it did not provide the fixture, it had no duty to maintain it. Con Ed suggested that Livingston's employees broke the fixture and was therefore responsible, but there was no evidence offered by Con Ed to establish this.

The fluorescent light fixture is not the type of equipment which is specifically listed in paragraph 4, and it is not included by the catch-all "all necessary and proper equipment, apparatus and appliances." See Bristol v. Cornell University, 237 App.Div. 771, 263 N.Y.S. 380 (3d Dept. 1933); Fishman v. Town of Islip, 20 Misc.2d 180, 189 N.Y.S.2d 979 (Sup.Ct. Suffolk Co. 1959), aff'd, 10 A.D.2d 984, 204 N.Y.S.2d 82 (2d Dept. 1960), rearg. and app. denied, 11 A.D.2d 949, 207 N.Y.S.2d 434 (2d Dept. 1960); President and Directors of Manhattan

Co. v. Erlandsen, 36 N.Y.S.2d 136 (Sup. Ct. Queens Co. 1942), aff'd, 266 App.Div. 883, 43 N.Y.S.2d 639 (2d Dept. 1943), app. denied, 266 App.Div. 924, 44 N.Y.S. 2d 471 (2d Dept. 1943).

If there is any ambiguity in paragraph 4, as to whether it applies only to the Contractor's equipment, or was intended to include Con Ed's as well, and as to whether the fluorescent light fixture was the type of equipment intended, " 'any fair doubt as to the meaning of its own words should be resolved against' " Con Ed since the contract was written on Con Ed's form. Rentways, Inc. v. O'Neill Milk & Cream Co., 308 N.Y. 342, 348, 126 N.E.2d 271, 273 (1955).

The Clerk may enter judgments (1) in favor of plaintiff and against Con Ed in the amount of $87,142.35, together with the costs of the action, and (2) in favor of Livingston dismissing the third-party complaint with costs.

It is so ordered.